No. 43,711

Lodie Marietta, *Appellant,* v. Vernon C. Springer, d/b/a Rusty's Food Center, *Appellee.*

(392 P. 2d 858)

Opinion filed June 6, 1964.

*George V. Allen,* of Lawrence, argued the cause, and *Murvyl Sullinger,* of Pittsburg, was with him on the briefs for the appellant.

*Wayne Hundley,* of Topeka, argued the cause, and *Allen Meyers, Herbert A. Marshall,* and *Doral H. Hawks,* all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal in a damage action for personal injuries from the trial court's order of April 22, 1963, sustaining defendant's demurrer to plaintiff's evidence, entering judgment for defendant thereon, and from its order overruling plaintiff's motion for new trial on June 21, 1963.

Since there is no question involving the pleadings, we shall proceed directly to the evidence introduced on behalf of plaintiff.

Plaintiff was the only witness in her behalf. Essential parts of her testimony showed that on December 17, 1958, she went to defendant's food market at about 2:00 p. m. The weather was clear and dry. For a period in excess of five years plaintiff had been a customer of defendant. On the day in question as she came to the store entrance she observed a sign which instructed prospective purchasers of Christmas trees to make their own selection and bring the tag from the tree selected to the cashier for payment. A ramp was provided for the public to use in approaching the entrances to

defendant's store. The ramp was between five and six feet wide at the rear or south end and about seven feet wide at the front door, or north end. For the first time during the five years plaintiff had been a customer of defendant, he had leaned Christmas trees against the building, thus taking up two and a half to three feet of the walking width of the ramp. As plaintiff proceeded along the line of trees, she selected two and held them out away from the others and stepped back to look at them. Her heel went into a hole caused when cars were parked and bumped into the top edge of the ramp which, at the point in question, was approximately twenty inches above the parking lot with two steps down to the surface of the lot. Plaintiff was thrown off her balance and down the two steps onto the parking surface and her arm was broken.

Restricted space at plaintiff's home required a small tree and she wanted a full tree, not a skinny one, and thus she was looking them over and found two nice trees. She took a step backward to get a better view of the trees and fell.

Plaintiff's evidence continued:

"Q. Why didn't you look back to where you were stepping? A. My mind was on the Christmas tree. I didn't have any thought on my mind that I would go off the ramp. I had walked on the ramp many times but the trees wasn't there. There was always enough room and there was no reason for me to think there wasn't enough room. My attention was on the trees."

The edge of the ramp was approximately two and one half to three feet from the edge of the trees and she held the two trees out at arms length. She knew the ramp was built up and had steps down to the parking area. She did not look back because her attention was taken by the trees.

"Q. You stepped back? A. Admiring the trees.

"Q. And fell? A. Yes.

. . . . . . . . . . . . .

"Q. It wasn't anybody's idea but your own to step back? A. Those trees were there for me to look at.

"Q. And that is what you were doing? A. That's right.

"Q. And you thought you could step back and see them better? A. I knew I could."

. . . . . . . . . . . . .

"Q. If you looked back there was no reason you could not see the edge of the pavement or edge where you stepped? A. I suppose if I looked back I would have seen that, but as I say I was looking at the trees and I assumed it was wide enough to stand otherwise why would they be there.

. . . . . . . . . . . . .

"Q. If you had looked there would have been nothing to prevent your seeing? A. I was looking at the trees.

"Q. But you were not surprised there was a step when you fell on it were you? A. No, I knew all along there was a step up there.

"Q. And even though you knew that you still took this step back and just stepped off it, is that right? A. My heel went into one of these cracked places and threw me.

"Q. Do you see any reason, looking at this picture, do you see any reason why you could not have stayed on the walk surface? A. Sir, I didn't fall on purpose. If I accidently fell off there it wasn't on purpose.

"Q. And what you did was take a step back? A. That's right. I stepped out like that to make more space for myself.

The trees were tagged for sale. There was no clerk or attendant to assist in the selection of the trees.

"Q. If there had been a sign there saying step-off, or step to the west, or whatever you think should be put on such a sign, that would not have been any help to you because you knew the steps were there? A. I believe it would have reminded me they were there and drew attention.

"Q. It would not have told you anything you didn't already know? A. No it wouldn't told me anything I didn't know, but it would have reminded me it was there.

"Q. . . . . You knew there was a step there? A. I found out.

"Q. You knew that already they were there? A. Yes."

Plaintiff stated that after her fall she had "raised up" from the surface of the parking lot so that she was sitting on the first step below the ramp. It was day light and she had wonderful vision and had never worn glasses and if she had looked back and seen and observed where she was stepping, the fall would not have happened but her attention was turned to the trees. She knew there was no barricade or railing on the ramp.

Defendant had taken a statement from plaintiff in her home which was introduced into evidence as defendant's exhibit "A." The record does not disclose the statement was part of or had anything to do with plaintiff's testimony and since we are committed to the rule of liberal construction of plaintiff's testimony, as well as the rule that the contents thereof are admitted as true when such evidence is attacked by demurrer (*Milwaukee Ins. Co. v. Gas Service Co.*, 185 Kan. 604, 608, 347 P. 2d 394) we do not deem it proper to set out or discuss such statement.

The trial court, in its formal journal entry of judgment sustaining defendant's demurrer and entering judgment in favor of defendant, had this to say:

". . . that plaintiff's evidence fails to prove a cause of action against defendant for the reason that plaintiff's evidence fails to prove negligence on the part of defendant, and affirmatively proves contributory negligence on the part of plaintiff. Said demurrer is thereupon argued to the Court, and the Court finds that said demurrer should be sustained for the reason and on the ground that plaintiff's evidence fails to prove any negligence on the part of defendant, and also affirmatively proves that plaintiff was guilty of contributory negligence which proximately caused her own injury, and judgment should be entered in favor of defendant for costs."

Plaintiff filed a motion for new trial and the trial court in overruling the motion further stated:

"There was no evidence that (1) the premises were not maintained in a reasonably safe condition or that (2) defendant owed a duty to warn plaintiff of a situation with which, by her own admission, she was thoroughly aware. The only negligence proved by plaintiff's evidence was her own."

Hence this appeal.

In the oral argument before this court defense counsel repeatedly referred to plaintiff as a licensee on the premises of defendant. A very simple and direct answer to that is that counsel misinterprets the law because plaintiff in reality was a business invitee, as was clearly stated in *Little v. Butner*, 186 Kan. 75, 348 P. 2d 1022, where it was said:

"A person who enters a retail store for the purpose of making a purchase is a business invitee within the legal meaning of that term." (Syl. ¶ 3.)

See, also, *Graham v. Loper Electric Co.*, 192 Kan. 558, 561, 562, 389 P. 2d 750, where a business invitee and licensee are distinguished as is also the degree of care owed to each class by the owner or occupier of premises. (Syl. ¶ 1.)

While in the Graham case the decedent in the surviving widow's action for wrongful death was a business invitee by implied invitation, the rule of degree of care there stated is applicable here, which we consider to be a stronger case than the Graham case. We there stated:

"The owner or occupant of premises owes a much higher degree of care to avoid injury to an invitee than to a mere licensee. The owner or occupant of premises is liable to an invitee for injuries resulting from failure to exercise reasonable or ordinary care for the invitee's safety. The duty to exercise ordinary care is active and positive, and no element of wilfullness or wantonness need be present. The inviter has the duty to protect an invitee against

any danger that may be reasonably anticipated. The owner or occupant of premises is charged with the duty of exercising reasonable care to keep the premises in reasonable safe and suitable condition so as to avoid injury to an invitee or of warning an invitee of concealed perils of which the owner or occupant knows or should know by the exercise of reasonable diligence." (pp. 561, 562.)

Defendant relies on *George v. Ayesh*, 179 Kan. 324, 295 P. 2d 660, with respect to negligence and contributory negligence where a wholesale liquor salesman, as a business invitee, received injuries by reason of stumbling over a cardboard filler from a case of liquor. In affirming the trial court's order sustaining defendant's demurrer to plaintiff's evidence, this court held that plaintiff's evidence did not establish any hidden dangerous defects such as "a step-down, open hole, dark stairway, or the like." (p. 326.) A careful reading of the opinion shows the circumstances there were entirely different from those in the case at bar because one might well expect to find such a cardboard filler on the floor of a store-room of a retail liquor establishment.

In our case defendant stacked the trees on the surface of a ramp and leaned them against the side of the store building. In so doing he used up at least half the width of such ramp although the full width thereof was ample and safe for customers entering the place of business. To make a showcase out of at least half the width of the ramp for the purpose of displaying the trees, as well as placing a sign on the entrance door of the store directing the customers' attention thereto, actively created a place of danger and directed defendant's customers, including plaintiff, into such a perilous situation of danger that we are unable to agree with the trial court that plaintiff's evidence failed to show negligence on the part of defendant.

We consider this case to be stronger than the Butner case, *supra*, where the Rath Company, by its agent, with the permission of Butner, dispensed samples of its meat products and some of the samples were discarded on the floor, causing plaintiff to slip and fall and receive injuries therefrom. We there stated, on good authority, that where injuries to customers are caused by a dangerous condition negligently created or maintained by the proprietor or his servants, such condition is one which is traceable to the proprietor's own act and is a condition created by him, or under his authority,

and proof of notice to him is unnecessary; that the true ground of liability is the proprietor's superior knowledge over that of his business invitees of the danger, and while he is not an insurer of them, he fails to give warning of the risk.

In paraphrasing a pertinent statement from the Butner case (p. 84) and substituting our plaintiff for the one there, we may say that where a customer, such as plaintiff, in the proper pursuit of her business, passed along a ramp where Christmas trees were displayed, she would necessarily be required to pay close attention to the trees and *would not ordinarily be expected to watch the edge of the ramp and each step taken in selecting a tree.*

In other words, it is not contributory negligence for a business invitee upon the premises to fail to look out for danger where there is no reason for an ordinarily prudent person to apprehend a peril such as is set out in plaintiff's evidence herein.

Plaintiff directs our attention to *Zumbrun v. City of Osawatomie,* 135 Kan. 26, 10 P. 2d 3, where the action was for the death of an electrician who had turned off the electric current before attempting some work in the attic of a building. He later made a second trip to the attic and seemingly forgot to turn off the current the second time. He was found dead from electrocution in the attic. This court said:

"Apparently before Zumbrun went into the attic the first time he turned off the switch, since that was the proper thing to do and he was not injured on that occasion. Perhaps he may have forgotten to do so the second time. But there is good authority for the view that temporary forgetfulness of a known danger does not necessarily constitute contributory negligence as a matter of law." (p. 31.)

Literally speaking, we question the applicability of that rule in our case because (1) this was the first time defendant had displayed the trees in such a manner (2) plaintiff frankly admitted in her testimony she knew where the edge of the ramp was (3) plaintiff did not forget the surrounding facts and circumstances and (4) her attention was diverted away, not by any act of hers, but by reason of the direction of defendant and the act of defendant in placing the trees where he did, which caused her to fall. In the Zumbrun case the decedent's expert knowledge of the danger of electricity and the possibility he might injure himself by failing to cut off the electric current constituted superior knowledge of his part which in the law would make that case much weaker than the case now before us.

We conclude the trial court failed to determine this demurrer upon the evidence and rules in regard thereto, but weighed the evidence which, of course, it could not properly do.

Judgment reversed with directions to overrule the demurrer, grant a new trial, and proceed in accord with the view expressed herein.

PARKER, C. J., and PRICE and SCHROEDER, JJ., dissent.