No. 43,484

BETTY ANN GRAHAM, As Widow of James Mathew Graham, Now Deceased, *Appellee,* v. LOPER ELECTRIC COMPANY, INC., A Corporation, *Appellant,* and I. D. BARBER, a/k/a PETE BARBER, *Defendant.*

(389 P. 2d 750)

Opinion filed March 7, 1964.

Robert L. Howard, of Wichita, argued the cause, and George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Charles J. Woodin and Mikel L. Stout, all of Wichita, were with him on the briefs for the eppellant.

William C. Farmer, of Wichita, argued the cause, and Paul V. Smith, Douglas E. Shay, Leo R. Wetta and James R. Schaefer, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment rendered in a wrongful death action. The issues presented for review require a rather detailed statement of the facts.

The defendant, I. D. Barber, was the owner of certain real property located in the 9400 block on West Central Avenue in the city of Wichita, Kansas. About February 25, 1959, he started building a shopping center at the location. He subcontracted various portions of the work including a contract with the Loper Electric Company, Inc., for all of the electrical wiring and the setting of a service pole to the rear of the building to support the electric power lines from the main line to the shopping center.

On March 17, 1959, Mr. Shumate, a commercial representative of Kansas Gas and Electric Company, visited with Barber at the shopping center location. Thereafter, Shumate prepared preliminary papers on the project in the K. G. & E. offices. Shumate contacted the Loper Electric Company on March 25, 1959, and obtained additional information as to the type service which would be required. During this conversation, K. G. & E. was informed by Loper Electric Company that service was required to be in-

stalled by April 25, 1959. After Shumate had obtained the necessary information from Loper Electric Company that was required, he proceeded to prepare additional documents on K. G. & E. forms preparatory to the installation of service as requested. A work order was prepared, a plot plan was obtained from Loper Electric Company and a notation was put on the work order to "please rush." The work was scheduled the week of April 9, 1959. After the job was placed on the work schedule, it would take in excess of 3 weeks before the construction crews of K. G. & E. could actually perform the work.

In the last week of April, 1959, Barber notified Loper that he had to have the service pole set in order to start the construction of black top surfacing. Loper stated that he did not have a clamp which was necessary to use in setting the pole and that he would have to set it on a temporary basis. He probably set the pole the same day. The pole was set in the ground approximately 15 inches deep.

The pole was not intended to be self supporting but was to be fastened to the structure for support by the use of 14 inch bolts which had been built into the wall of the building. The clamp which was to go around the pole and fasten to the bolts was not immediately available. The pole was temporarily fastened to the eaves of the building by a plumber's strap and screws or nails. There was no signal or warning of any kind placed on the service pole.

On the morning of May 1, 1959, a construction crew of K. G. & E., including the decedent, James Mathew Graham, went to the premises to perform the services shown by their work order. The work order included materials which were to be used on hooking up the service pole to the main line, hanging a transformer, making the necessary connections, running service lines to the service pole and checking the voltage.

The foreman of the crew looked at the pole and saw nothing wrong with it. It had been set in the ground, tamped, and had a little strap around it at the top of the building. He did not know the purpose of the strap but saw no reason to suspect the pole was not safe. Graham was told to climb the service pole and put the necessary equipment on it. The other crew members who were present at the time testified that they didn't see anything unusual or wrong or any danger signals about the pole being unsafe to climb. Graham was stretching a wire putting tension on the pole

when it suddenly gave way and fell to the ground. The pole fell on Graham, critically injurying him. He died a few minutes after he arrived at the hospital.

The action was brought by the widow of James Mathew Graham for the benefit of herself and their two minor children against the Loper Electric Company, Inc. and I. D. Barber. When the case came on for trial, a demurrer was sustained to the opening statement of plaintiff as to the defendant Barber.

The jury returned a verdict against the Loper Electric Company in the amount of $22,500 which was approved by the court. The Loper Electric Company has appealed.

The appellant presents its case here on the assumption that the deceased was a licensee of the appellant. The appellee tried her case below and defends here on the theory that the deceased was a business invitee of appellant.

The degree of care which an owner or occupant of premises owes to a licensee and that which is owed to an invitee does not appear to be in serious dispute. The general rules will be briefly stated.

Generally a mere licensee has no cause of action because of injury received through the negligence of the owner or occupant of the premises to which the license extends. The owner or occupant of premises owes no duty to the licensee except to refrain from wilfully or wantonly injuring him. (*Backman v. Vickers Petroleum Co.*, 187 Kan. 448, 357 P. 2d 748.)

Negligent injury of a licensee will not create a cause of action unless it is equivalent to wilfullness or wantonness. A mere licensee takes the premises as he finds them and assumes all risks incident to the condition of the premises. The owner or occupant of the premises may make any lawful use or changes in its property creating dangerous conditions without liability to a licensee for injury therefrom. (*Hogan v. Hess Construction Co.*, 187 Kan. 559, 358 P. 2d 755.) The limited liability or immunity from liability for injuries to a licensee applies to one who is lawfully occupying the premises as well as to the owner.

The owner or occupant of premises owes a much higher degree of care to avoid injury to an invitee than to a mere licensee. The owner or occupant of premises is liable to an invitee for injuries resulting from failure to exercise reasonable or ordinary care for the invitee's safety. The duty to exercise ordinary care is active and positive, and no element of wilfullness or wantonness need be

present. The inviter has the duty to protect an invitee against any danger that may be reasonably anticipated. The owner or occupant of premises is charged with the duty of exercising reasonable care to keep the premises in reasonable safe and suitable condition so as to avoid injury to an invitee or of warning an invitee of concealed perils of which the owner or occupant knows or should know by the exercise of reasonable diligence. (*Seymour v. Kelso,* 136 Kan. 543, 16 P. 2d 958; *Thogmartin v. Koppel,* 145 Kan. 347, 65 P. 2d 571; *Glenn v. Montgomery Ward & Co.,* 160 Kan. 488, 163 P. 2d 427; *George v. Ayesh,* 179 Kan. 324, 295 P. 2d 660; *Gardner v. Koenig,* 188 Kan. 135, 360 P. 2d 1107.)

The petition contained no allegation of wanton or wilfull negligence which would create a liability on the part of the appellant to a mere licensee. The allegations of negligence read:

"That the direct and proximate joint and concurrent cause of his death was the negligence of the defendants and each of them, their agents, servants and employees, which negligence consisted of the following acts and omissions to-wit:

"(1.) In failing to exercise ordinary and reasonable care in not setting the pole involved at a safe depth in the ground.

"(2.) In failing to adequately secure said pole to the adjacent building.

"(3.) In violating their duty to the employees of Kansas Gas and Electric Company and particularly this decedent to set the pole in a safe and proper manner at a time when they knew that linemen would at their express invitation, be working on said pole and connecting heavy electrical lines thereto.

"(4.) In failing to warn the decedent of the inherent dangers of climbing said pole and attaching heavy wiring thereto.

"(5.) In failing to exercise reasonable and proper care which ordinarily prudent persons would have exercised toward persons being invited on the premises to work on top of said pole.

"(6.) In failing to see the deceased in a position of danger when by the exercise of reasonable care they should have known the decedent or others would be placed in a position of danger by reason of the manner in which the pole was set."

The liability of the appellant therefore hinges on the determination of whether or not Graham, an employee of K. G. & E., was on the premises as a business invitee.

Although there are a few general principles which serve as a guide, to a great extent, whether a person is on property as a licensee or an invitee depends on the facts and circumstances of each particular case.

A licensee is defined in 65 C. J. S. Negligence § 32a, p. 481 as follows:

"The authorities have been said to differ widely as to when a person is to

be treated as a licensee, but, as a general rule, a person is a 'licensee,' as that term is used in the law of negligence, where his entry or use of the premises is permitted, expressly or impliedly, by the owner or person in control thereof, or by operation of law, so that he is not a trespasser as discussed supra § 23, but is without any express or implied invitation, since a license implies permission or authority and is more than mere sufferance, but generally it does not imply an invitation. A licensee, therefore, occupies a position somewhere between that of a trespasser and that of an invitee."

An invitee is also defined in 65 C. J. S. Negligence § 43 (1), p. 508 where it is stated:

"Broadly stated, an invitee is a person who enters on the premises of another in answer to an express or implied invitation. The term 'invitee' is more fully defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage, and the similar term 'business visitor' is defined as a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them. Whether a person entering the premises of another is an invitee depends on the purpose or the nature of business which brings him on the premises."

The definition continues:

"An invitation is implied where the entry on, or use of, the premises is for a purpose which is, or is supposed to be, beneficial to the owner or occupant, or where the entry or use of the premises is in the mutual interest or for the mutual benefit of the owner or occupant and the person who comes thereon, as where it is in the usual course of business or for a purpose connected with the business in which the owner or occupant is engaged or which he permits to be carried on there. As a general rule, this element of interest in, or benefit to, the owner or occupant, or mutual interest or benefit, is necessary to give rise to an implied invitation, and in the absence thereof the person entering does not occupy the status of an invitee, at least where he is not allured by an attraction constituting an invitation." (§ 43 (3), p. 511.)

It may be generally stated that an invitation may be implied if there is some relationship inuring to the benefit of both the injured party and that of the occupier of the premises. (*Bessette v. Ernsting,* 155 Kan. 540, 127 P. 2d 438.)

With the general rules before us we should consider the pertinent facts which tend to determine the relationship.

Loper Electric Company was a subcontractor of the owner of the premises who was acting as his own general contractor. There were other subcontractors in connection with the construction project. Loper Electric Company was to install all of the electrical wiring for the building and the service pole at the rear of the building. It knew the service pole was to be installed for the purpose of supporting the lead lines extending from K. G. & E.'s

power lines to the building. It knew that K. G. & E. had been requested to install the service by April 25, 1959. It installed the service pole sometime during the last week or ten days in April on the temporary basis. The employees of K. G. & E. started the installation on May 1, 1959. It was to Loper Electric Company's interest to have K. G. & E. run the lines from their power lines to the service pole as it would not be paid for the pole and equipment until everything was completed and satisfactory to the owner. The installations of neither K. G. & E. nor the Loper Electric Company could be considered complete until they were tied together at the top of the service pole and tested for proper service.

We are forced to conclude that it was to the mutual benefit of the owner, the occupant Loper Electric Company and K. G. & E. that the wires be extended to the service pole, and that there was an implied, if not a direct, invitation to K. G. & E. and its employees to enter the premises for the purpose of making the installation.

The appellant relies chiefly on *Toomey v. Wichison Industrial Gas Co.*, 144 Kan. 534, 61 P. 2d 891 as authority for its contention that the employees of K. G. & E. were mere licensees of the appellant. The facts in the Toomey case are readily distinguishable from the facts in the case now before us. In the Toomey case the employees of two competing gas companies entered the premises. The employees of one company entered for the purpose of disconnecting service. The employees of the other company entered for the purpose of connecting service. The work being done by one company was not for the mutual benefit of the other and there could be no implied invitation. The case of *Birt v. Drillers Gas Co.*, 177 Kan. 299, 279 P. 2d 280 also relied on by appellant can be distinguished for the same reason.

The jury disposed of the question of negligence in answer to a special question as follows:

"If you find for the plaintiff, state the act or acts of negligence you find against the defendant Loper Electric Company.

"Answer: Negligence on the part of Loper Electric Company, Inc., due to the fact that the pole was temporarily set in an unsafe and hazardous manner and not marked to indicate this condition by visual inspection. Furthermore Loper Electric Company did not mark or notify K. G. & E. of the unsafe and hazardous condition of the pole."

There was ample evidence to support the special finding of the jury.

What has been said disposes of appellant's contentions that the trial court erred in refusing to sustain appellant's demurrer to the

evidence, motion for judgment and motion for a directed verdict.

The appellant contends that the trial court erred in not giving counsel an opportunity to argue the merits of requested instructions. We find no merit in the contention. The law of the case was argued on numerous occasions. It was argued at the beginning of the trial; on demurrer to appellee's opening statement; at the end of the first day of the trial; at the end of the second day of the trial. The third day of the trial was adjourned early and the court spent some two hours with counsel discussing instructions. Counsel returned to the court's chambers early the next morning and the instructions were again discussed. Copies of the instructions were given to counsel for both parties before they were read to the jury.

Appellant contends that the trial court erred in not permitting its counsel to dictate objections to the instructions into the record before the instructions were read to the jury. Before the instructions were given the trial court announced that the record on objection to instructions would be made after the jury retired and would relate back to the point of time at which he was speaking. The appellant's rights were in no way prejudiced. The instructions which were to be given had been determined. The only purpose of the record was to preserve appellant's objections for review on appeal. The trial court protected that right.

The appellant makes extensive objections to all of the instructions given by the trial court and its refusal to give the instructions requested. The objections to the instructions are based largely on appellant's contention that the relationship of K. G. & E. and the Loper Electric Company was that of licensor and licensee. The trial court correctly disagreed with appellant's contention. The relationship being that of inviter and invitee, the instructions requested by appellant as to the degree of care owed to a mere licensee were not applicable.

Other alleged trial errors have been carefully examined and are found to be without substantial merit. A careful examination of the record discloses no trial errors justifying a reversal of the judgment.

The judgment is affirmed.

APPROVED BY THE COURT.

FONTRON, J., not participating.