No. 45,359

LINDA LEE PICKENS, Widow and Next of Kin of Jerry Kent Pickens, Deceased, and LINDA LEE PICKENS, Mother and Natural Guardian of JUDITH ANN PICKENS, KATHY LEE-ANN PICKENS and TERRY WAYNE PICKENS, Minor Children of Jerry Kent Pickens, Deceased, *Appellants*, v. EARL W. MAXWELL, *Appellee*.

(456 P. 2d 4)

Opinion filed June 14, 1969.

*Bill E. Fabian*, of Kansas City, argued the cause, and *Willard L. Phillips, Patrick B. McAnany, Thomas M. Van Cleave, Jr., James J. Lysaught, John J. Jurcyk, Jr., Robert E. Fabian, R. H. Foerschler* and *Robert D. Benham*, all of Kansas City, were with him on the brief for the appellants.

*Lawrence J. Nelson*, of Topeka, argued the cause, and *John H. Murray*, of Leavenworth, and *Harold E. Doherty* and *James E. Benfer*, both of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This was an action brought by a widow and children to recover damages for the wrongful death of a husband and father while traveling as a guest in an automobile which collided with another vehicle.

The collision between the defendant Maxwell's vehicle and one driven by a Phillip M. Ballantyne occurred at the intersection of Highway K-32 and Eudora Road in Leavenworth County, Kansas, at about 5:15 p. m., April 1, 1966. Eudora Road is blacktop, runs north and south, and southbound traffic is controlled by a stop sign at its intersection with Highway K-32. There is no control for traffic on Highway K-32 which has a speed limit of 70 miles per hour and is a blacktop state highway.

We gather these preliminary facts from the defendant's testimony. Maxwell had lived in the Tonganoxie area all his life. He was familiar with the intersection of Highway K-32 and Eudora Road having traveled over it frequently. He was aware that a stop sign

controlled southbound traffic at that intersection. He was aware that a person could not see eastbound traffic on Highway K-32 until that person was within a few feet of the stop sign north of the intersection. He knew the speed limit on Highway K-32 was 70 miles per hour.

On April 1, 1966, he took his children to school in Tonganoxie and then went to the Brady Motor Freight dock in Kansas City. He was driving his 1965 Chevrolet 2-door hardtop. It was equipped with automatic transmission, power steering and standard brakes. It had been driven about 11,000 miles and was in good operating condition. The weather was clear. He had some collecting to do at the freight company. He remained the rest of the morning and afternoon at the dock playing cards and visiting with other drivers. The deceased, Pickens, came in from a run for another owner and Maxwell offered to take him to his home in Eudora, Kansas. They left Brady Motor Freight about 4:00 p. m. The defendant was driving. They stopped at a tavern at 45th and State Avenue, Kansas City, Kansas, for the purpose of buying beer. They both went into the tavern where Pickens had a Schlitz and defendant had a coke. They each bought a 6-pack of beer and left to go home. The distance from the tavern to defendant's home was about 22 miles. Neither of them had anything to drink during that trip. He does not know what time they arrived in Tonganoxie, Kansas, where defendant resided. He took one can of Hamms out of his 6-pack into the house for his wife. Pickens took one Schlitz out of his pack and Mrs. Maxwell and Pickens each drank a beer in the Maxwell home.

All three left to drive Pickens home, defendant was under the wheel, Mrs. Maxwell in the center and Pickens on the right side.

Mrs. Maxwell had forgotten her purse and Maxwell went back for it. When he returned he doesn't know whether he got under the wheel but his children have since told him he was driving as the car left the home. As he left to get the purse his wife was opening another can of Hamms. The remaining cans were on the floor of the rear seat.

From this point the defendant remembers nothing of the trip or the accident. The next thing he remembers he was at the hospital. There were no eye witnesses to the accident. Mrs. Maxwell and Phillip Ballantyne, the driver of the other colliding automobile, died at the scene and Jerry Pickens died two days later.

As the accident was reconstructed, it appears the eastbound Ballantyne vehicle left skidmarks of 70 feet before impact. The southbound Maxwell car left 15 feet of uninterrupted skidmarks before impact. These skidmarks began 3 feet north of the center line on Highway K-32. The point of impact was just south of the south edge of Highway K-32. The major automobile damage was to the right front of the defendant's car and left front of Ballantyne's car. The Ballantyne car continued southeast 123 feet turning over on its right side en route. The defendant's car spun counter clock-wise to the east and slapped its right side against the Ballantyne vehicle's left side after the initial impact. Pickens and Mrs. Maxwell were thrown from the right side of the Maxwell vehicle during this spin.

The stop sign controlling southbound traffic was 25 feet 6 inches north of the north edge of Highway K-32 and 49 feet 6 inches north of point of impact.

Officers, whose experience ranged from three to eleven years, gave their opinion as to the facts surrounding the accident.

Deputy Sheriff Floyd Baker testified that a person who stopped even with the stop sign could see 400 yards to the west on Highway K-32. Ballantyne's automobile came from the west.

Trooper Bill Wilson's testimony was summarized:

". . . The length of skidmarks, lack of skidmarks, damage to involved vehicles were used to reach conclusions as to how the various accidents had occurred. The conclusions were later borne out by testimony or other proof as to how the various accidents had happened. Based upon his past experience, training and his investigation at the scene of the April 1, 1966 accident, including the skidmarks, damage, etc., Trooper Wilson was of the opinion that the Maxwell vehicle had not stopped at the stop sign."

His testimony also inferred that the defendant was going over 20 miles per hour when he passed the stop sign or he could have stopped before the impact.

Trooper Ronald Cranor testified that in his opinion the defendant did not stop at the stop sign. If the defendant had only been going 20 miles per hour when he passed the stop sign he could have stopped prior to the point of impact.

Trooper Locy, while leaning over the defendant at the scene of the accident, ". . . smelled alcoholic beverage about him even though a very strong wind was blowing and Maxwell was lying in the open. He could not testify that the smell came from his breath.

There were open cans of beer in the vicinity of where Maxwell was lying but how close he could not say."

He also testified that—

"Based upon the fact there were no skidmarks or acceleration marks north of K-32 on Eudora Road, based upon the skidmarks on K-32 showing he had some speed when he came onto K-32, based upon the fact the Maxwell car was still in motion at time of impact, based upon his experience and training in traffic investigation, Trooper Locy was of the opinion that Maxwell ran the stop sign."

At the close of plaintiff's evidence the trial court sustained a motion for a directed verdict stating in part:

". . . I have concluded that as a matter of law that the defendant was not guilty of wanton negligence.

"I think the most that can be said for the plaintiff's evidence would be that it establishes—or at least the jury could find—that the defendant was driving the automobile at the time of the collision and that the defendant failed to stop at the stop sign. But the plaintiff's evidence also shows, though, that there were skidmarks which would indicate that the defendant did apply the brakes prior to the impact, and the evidence establishes the skidmarks were 15 feet in length, and in view of all this I don't feel that the Court can let this matter go to the jury. . . ."

The plaintiffs have appealed.

The only question before us is whether or not appellants presented a *prima facie* case of gross and wanton negligence when tested by a motion for a directed verdict.

It perhaps would be of assistance if we first consider the rules which govern the court's consideration of plaintiffs' evidence on a motion for a directed verdict.

We have presented here only the evidence favorable to appellants. We have ignored the evidence favorable to appellee and set out at length in his brief. This we are forced to do under the rules of this court.

Although the evidence is weak and inconclusive, a question of fact may not be taken from the jury where reasonable minds might reach different conclusions therefrom. On considering a motion for a directed verdict on an issue of fact, all disputed factual questions and all inferences reasonably to be drawn therefrom must be resolved strictly in favor of the party against whom the motion is directed and the trial court should not weigh conflicting evidence or consider the preponderance thereof. (*Gardner v. Pereboom,* 197 Kan. 188, 416 P. 2d 67; *Bendure v. Great Lakes Pipe Line Co.,* 199

Kan. 696, 433 P. 2d 558; *Virginia Surety Co. v. Schlegel*, 200 Kan. 64, 434 P. 2d 722; *Furstenberg v. Wesley Medical Center*, 200 Kan. 277, 436 P. 2d 369; *Brown v. Godfrey*, 200 Kan. 568, 438 P. 2d 117.)

Mindful of the above rules, we are next concerned with whether plaintiffs' most favorable evidence infers "gross and wanton negligence" as that term is used in the automobile guest statute (K. S. A. 8-122b).

In the case of *Muhn v. Schell*, 196 Kan. 713, 413 P. 2d 997, we held:

"Wantonness constituting gross and wanton negligence, as that term is used in the automobile guest statute (K. S. A. 8-122b), indicates a realization of the imminence of danger, and a reckless disregard, complete indifference and unconcern of the probable consequences of the wrongful act.

"The mental attitude of the wrongdoers, rather than the particular negligent act or acts, tends to establish wantonness, and whether the necessary elements are present to constitute wantonness must of necessity depend on the facts and circumstances of each particular case." (Syl. 1 and 2.)

At page 715 of the opinion we state:

"This court has had numerous occasions to consider and apply the phrase 'gross and wanton negligence' as used in the statute. In the recent case of *Saunders v. Shaver*, 190 Kan. 699, 378 P. 2d 70, our conclusions are summed up as follows:

" '. . . A wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result. A few of our most recent cases supporting the mentioned rules of law are *MacDougall v. Walthall*, 174 Kan. 663, 257 P. 2d 1107; *Elliott v. McKenzie*, 180 Kan. 344, 304 P. 2d 550; *Hickert v. Wright*, 182 Kan. 100, 104, 105, 319 P. 2d 152; *Dirks v. Gates*, 182 Kan. 581, 589, 322 P. 2d 750; *Hanson v. Swain*, 172 Kan. 105, 109, 238 P. 2d 750, and the many cases cited and reviewed in the mentioned authorities.' (p. 701.)"

In the *Muhn* case we considered the fact that since this state does not recognize degrees of negligence, we had somewhat disregarded "gross negligence" and come to lean heavily on the word "wanton" in considering liability to a guest riding in an automobile, and stated:

"Perhaps the mental attitude of the wrongdoer, rather than particular negligent acts, tends to establish wantonness. It would appear that at least two attitudes must be present. There must be realization of imminent danger and reckless disregard, indifference and unconcern for probable consequences.

Therefore, whether the necessary elements are present to constitute wantonness must of necessity depend on the facts and circumstances of each particular case." (p. 716.)

Under the facts and circumstances of the present case, it would appear that the appellee (1) had a realization of imminent danger and (2) it could be inferred that he proceeded with reckless disregard, indifference and unconcern for probable consequences.

The evidence is not disputed that Maxwell had lived in the Tonganoxie area all his life. He was familiar with the intersection of Highway K-32 and Eudora Road and traveled over it frequently. He was aware that a stop sign controlled southbound traffic at that intersection. He was aware that a person could not see eastbound traffic on Highway K-32 until that person was within a few feet of the stop sign north of the intersection. He knew the speed limit was 70 miles per hour on Highway K-32.

With this knowledge of imminent danger, the appellee approached the intersection, passed the stop sign and entered the intersection at a speed in excess of 20 miles per hour. He exposed his passengers to injury by any automobile approaching the intersection from the west. There was one.

The trial court suggests "that there were skidmarks which would indicate that the defendant did apply the brakes prior to the impact." It was then too late. The defendant's negligence had committed his passengers to a danger from which they could not be extricated. The die was cast. In *Bogle v. Conway*, 198 Kan. 166, 422 P. 2d 971, while considering wanton negligence, we stated:

". . . The fact that the driver on the left elected to try to return to his side of the road, instead of hitting the approaching automobile head on, does not change the fact that both drivers deliberately took the chance. Liability in such situation arises not from negligence after the emergency arises, but rather from conduct calculated to create the emergency" (p. 171.)

We are forced to conclude that the trial court erred in taking the case from the jury and in sustaining appellee's motion for a directed verdict.

The judgment is reversed with directions to the trial court to grant the plaintiffs a jury trial in harmony with what has been said in the opinion.

APPROVED BY THE COURT.

PRICE, C. J., SCHROEDER and FROMME, JJ., dissenting.