No. 45,649

VERDA ELOISE WEIL, *Appellant,* v. MURRILL SMITH and ETTA M. SMITH, Husband and Wife, *Appellees.*

(469 P. 2d 428)

Opinion filed May 9, 1970.

*Charles D. Green,* of Manhattan, argued the cause, and *Richard C. Wells,* also of Manhattan, was with him on the brief for the appellant.

*John F. Stites,* of Rogers, Stites & Hill, of Manhattan, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This appeal stems from an action to recover for injuries received when the plaintiff suffered a fall on the defendants' front porch resulting in a fractured ankle. Summary judgment was entered in favor of the defendants on the ground that the plaintiff was a mere licensee at the time of her injury.

The sole question presented on appeal is whether the trial court was correct in entering summary judgment on the premise that the status of Mrs. Weil, the plaintiff, was that of a licensee, since the plaintiff concedes there is no evidence of willful, gross or wanton negligence on the part of the defendants.

A somewhat detailed recital of the facts is required. On the afternoon of November 2, 1965, the plaintiff stopped at the Smith residence for the purpose, according to her own testimony, of picking up some eggs. After a bit of womanly conversation, she inquired if Mrs. Smith had any eggs that day. Receiving a negative response, Mrs. Weil shortly thereafter took her leave. As she proceeded through the door leading to the porch, she stepped on a mat on the porch floor which slipped and gave way, causing Mrs. Weil to fall and break her ankle.

According to the deposition of Mrs. Weil which was before the court, together with the deposition of Mrs. Smith, she had been getting fresh eggs from Mrs. Smith for about a year or so, as and when she needed them, during which time either she or members of her family had gone to the Smith house some twenty-four times for such purpose; that these trips were not made on a regular or weekly basis, but just when the plaintiff was out of eggs; this arrangement originated through a niece of Mrs. Smith, who was getting eggs from her aunt; that she, Mrs. Weil, paid Mrs. Smith thirty-five cents a dozen for the eggs she received; on November 2, the date of the fall, Mrs. Smith had not called her to come and get eggs but she went to the Smith house for that purpose and didn't think she

would have stopped there if she hadn't needed eggs that day; that she was stopping after eggs if Mrs. Smith had any.

To some extent Mrs. Smith's deposition coincided with that of Mrs. Weil. Mrs. Smith's testimony was that a family friend brought the eggs to her house as a favor to a widowed farm lady and that she paid thirty-five cents a dozen for them; that her family, her daughters, nieces and sister usually took most of the eggs at the same price she paid and sometimes there would be extra ones that Mrs. Weil would get, sometimes from her niece, Mrs. Lessline, a neighbor of Mrs. Weil, and some five or six times from Mrs. Smith herself; that she never called Mrs. Weil to come and get eggs and did not do so on the day in question; that basically, the eggs were for members of her family but sometimes she would get over supplied when they went on vacation, or when her farm lady would send more eggs than they really wanted; on the day of the accident she and Mrs. Weil talked awhile before the latter asked about eggs and was advised there were none; they talked a few minutes longer and plaintiff then left, with the remark that she was going to pick up her daughter and go on to Fort Riley; that Mrs. Weil was at her house between fifteen and twenty minutes.

Both women agreed they were on friendly terms, occasionally going to bingo parties together and visiting each others premises when asked; Mrs. Smith said she presumed she was a social friend of the plaintiff.

It is against this background that we are called upon to determine the soundness of the summary judgment entered by the trial court in favor of the defendants.

The principles governing the duty owed by an owner or occupant of land to a licensee or social guest on the one hand, and to a business or public invitee on the other, have frequently been considered by this court and have become well established in this jurisdiction. In general, the duty owed to a licensee is much less onerous than that due an invitee. As to the former, liability is predicated only on conduct equivalent to wilfullness or wantonness; as to the latter, the basis of liability of simple negligence alone. (*Morris v. Atchison, T. & S. F. Rly. Co.*, 198 Kan. 147, 422 P. 2d 920.)

Definitions of "licensee" and "invitee", which we deem still to be sound, may also be found within the covers of our reports but, as is so often the case, vexing problems continue to arise with respect

to the application of those principles under the facts of specific situations.

Before proceeding further it would be well to point out that the term "invitee" *is used in this opinion in the context of what we* have often denoted a "business invitee."

It may be helpful to refer at this point to what has been said in previous cases. In *Graham v. Loper Electric Co.*, 192 Kan. 558, 389 P. 2d 750, by way of distinguishing the terms licensee and invitee we employed this language:

"A licensee is defined in 65 C. J. S. Negligence § 32a, p. 481 as follows:
"'. . . [A]s a general rule, a person is a "licensee," as that term is used in the law of negligence, where his entry or use of the premises is permitted, expressly or impliedly, by the owner or person in control thereof, or by operation of law, so that he is not a trespasser . . .'

"An invitee is also defined in 65 C. J. S. Negligence § 43 (1), p. 508 where it is stated:
"'Broadly stated, an invitee is a person who enters on the premises of another in answer to an express or implied invitation. The term "invitee" is more fully defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage . . .'" (pp. 562, 563.)

Speaking further in the *Graham* case the court went on to say:

"It may be generally stated that an invitation may be implied if there is some relationship inuring to the benefit of both the injured party and that of the occupier of the premises. (*Bessette v. Ernsting*, 155 Kan. 540, 127 P. 2d 438.)" (p. 563.)

In a more recent case relating to the same topic, *Smith v. Board of Education*, 204 Kan. 580, 464 P. 2d 571, we referred to the opinion in *Graham* and further quoted from 65 C. J. S. (1966 Ed.), Negligence, § 63 (41), p. 716, as follows:

"'Many cases define an invitee as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage. Whether a person entering the premises of another is an invitee depends on the purpose or the nature of business which brings him on the premises. If the purpose of the entry or visit is one of common interest or mutual advantage, the visitor is considered an invitee.

"'One entering premises on invitation does not enjoy the status of invitee unless the entry is made in connection with the business or purposes of the owner. Only a person who goes on the land for the purpose of carrying on a transaction for the benefit of both parties or the benefit of the owner can attain the status of invitee. To establish an inviter-invitee relationship, there must

be some real or supposed mutuality of interest in the subject to which the visitor's business or purpose relates. If the invitation is purely for the benefit, convenience, or pleasure of the one invited, he is a licensee, . . .'" (pp. 586, 587.)

In many instances, if not, indeed, in most, it can be said that status of a visitor may be determined as a matter of law. For example, we have not hesitated to say that one who enters a retail store for the purpose of making a purchase therein is a business invitee. (*Little v. Butner*, 186 Kan. 75, 348 P. 2d 1022; *Marietta v. Springer*, 193 Kan. 266, 392 P. 2d 858.) On the other hand, we have been consistent in holding that one who makes a social visit, even by express invitation, is merely a social guest and does not come within the category of either a business or a public invitee. (*Ralls v. Caliendo*, 198 Kan. 84, 422 P. 2d 862; *Duckers v. Lynch*, 204 Kan. 649, 465 P. 2d 945.)

There are however, situations where the line between social and business visitors may not be drawn so clearly; where the benefit to the landowner or the mutuality of interest and advantage to both invitor and invitee may not be so obvious or patent. Occasions may arise when the evidence, and the reasonable inferences to be drawn therefrom, may reasonably admit of more than one conclusion, and where such be the case, the matter is one of fact for submission to a jury—or to the court where it is acting as the trier of the facts. In *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621, we said:

"Courts should be careful not to encroach upon the province of jurors when the facts, although undisputed are such that the minds of candid persons may draw differing inferences and arrive at opposing conclusions. . . ." (p. 483.)

Examples are not lacking in this area—either in Kansas or in other jurisdictions. In *Weaver v. Laundon*, 186 Kan. 551, 352 P. 2d 412, one of the questions submitted on appeal was whether the plaintiff was a business invitee as to that part of the defendants' premises where the accident occurred. Briefly, the facts were these: Plaintiff and her husband had taken a few turkeys to the defendants' place of business to be killed, dressed and placed in plastic bags. Upon returning for the birds at the time they were promised, the couple found the turkeys had not been bagged, and that the employees responsible for bagging them had left. They thereupon obtained some bags from the office and proceeded to the "killing

room" to bag the birds themselves, and there the plaintiff fell and injured herself.

In reversing the trial court's order which sustained a demurrer to the plaintiff's evidence, this court said there was evidence from which a jury could find that the plaintiff was a business invitee on the premises of the defendants at the time and place where she fell.

In *Augsburger v. Singer,* 103 Ill. App. 2d 12, 242 N. E. 2d 436, it was held that the evidence raised a jury question as to whether the plaintiff, who was injured while helping the defendants dismantle a carnival display, was a volunteer or whether he was an invitee.

To similar effect, the California court, in *Cain v. Friend,* 171 C. A. 2d 806, 341 P. 2d 753, said that whether one is an invitee or a licensee (it being contended that the plaintiff was merely a social visitor or guest) is a question of fact where the evidence is conflicting.

The facts in a recent Colorado case, *Husser v. School Dist.,* 159 Colo. 590, 413 P. 2d 906, posed the question of whether a florist who had delivered a floral display to the high school auditorium and insisted on placing it on the stage instead of in the foyer, was an invitee at the time and place of his injury. In the course of its holding that a jury question was presented, the court said:

"An owner's duty of care varies according to the relationship he bears to the person on his premises. Where the latter's status is equivocal by reason of conflicting evidence and the legitimate inferences which may be drawn therefrom, it becomes the duty of the jury to determine whether he is an invitee or a licensee. . . ." (p. 593.)

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"In the case of a licensee, the advantage is unilateral; he goes upon the premises for his own convenience or to advance his own interest, pursuant to the permission or consent of the owner. . . ." (pp. 594, 595.)

"An invitee is one who comes upon the premises of another to transact business in which the parties are mutually interested. . . ." (p. 594.)

In *Schwartz v. Eisen,* 267 N. Y. S. 2d 541, 25 A. D. 2d 555, the plaintiff wife testified at the trial that on the day of her injury she had gone shopping for the defendant at the defendant's request; that she entered the defendant's premises to deliver her purchases and, while leaving, stepped on a loose brick which gave way causing her to fall. The New York court held such testimony was sufficient to raise a question of fact as to whether the plaintiff was a social

visitor or a business invitee and her case should not have been dismissed at the close of her evidence.

See, also, *Patania v. Silverstone*, 3 Ariz. App. 424, 415 P. 2d 139; *Mozert v. Noeding*, 76 N. M. 396, 415 P. 2d 364.

The evidence is sparse in this case as to what, if any, benefit accrued to Mrs. Smith from the arrangement under which Mrs. Weil purchased her excess eggs. However, we are unable to say, as a legal proposition, that differing conclusions might not reasonably be drawn from the testimony. Although the evidence stands undisputed that the price paid by Mrs. Weil was identical with that paid by Mrs. Smith to her supplier, the circumstances are such that an inference of mutual benefit and advantage to both women might reasonably be justified. It is at least arguable that each lady derived an advantage which to her was beneficial, as they jointly pursued a plan whereby Mrs. Weil received fresh eggs at a reasonable price and Mrs. Smith disposed of her surplus eggs.

As we have indicated before, a financial benefit to an owner or tenant of land is not an essential factor in the creation of an invitee status, as such a status is contrasted with that of a licensee. The case of *Rollins v. Marengo*, 354 Mass. 765, 238 N. E. 2d 372 is illustrative. In that case the plaintiff, who was to act as the godmother of the defendants' two-week old child at its christening, was injured in a fall on an outside step at defendants' home while carrying the infant. Her purpose in being at defendants' home was to act as godmother and take the child to church, since the mother was going to stay home. The case was submitted to the jury which found the defendants were liable to the plaintiff, not as a social visitor but as an invitee.

In a memorandum filed by the trial court in the instant case the court pointed out, that on the day in question, Mrs. Smith had no excess eggs for disposal. Although this may have saddened Mrs. Weil, this factor would not play a decisive role in the determination of her status. Actual receipt of benefits from a visit is not essential to a visitors' status as an invitee, and a person may be a business invitee even though the landowner ultimately receives no tangible benefits from the transaction. (65 C. J. S., Negligence, § 63 (43)b, p. 725.)

Nor do we consider as conclusive on the question of Mrs. Weil's status, the fact that Mrs. Smith derived no financial profit from the sale of eggs to Mrs. Weil, if there were other benefits or advantages flowing to Mrs. Smith from the mutual course of their dealing.

In the brief filed by the defendants it is inferred that the purchase of eggs was not the real purpose behind Mrs. Weil's visit. In this connection the defendants emphasize the social friendship existing between the two women, together with the length of time and the range of subjects covered by their conversation both before and after the subject of eggs came up.

The significance which attends the underlying purpose of a visit made to the premises of another is emphasized in the language found in *Lemon v. Busey*, 204 Kan. 119, 461 P. 2d 145. In that case, speaking through Justice Schroeder, the court said:

"The fact that someone is invited to visit does not make him a public invitee. The purpose of his visit determines his status. . . ." (p. 123.)

We believe the same holds true when the issue to be determined is whether the status of one who is on another's land is that of a licensee or a business invitee, or where a distinction has to be made between a purely social visit and one bringing mutual benefit to both host and guest. When the question to be resolved concerns the status of one who has entered upon another's premises by express or implied invitation, the issue is to be determined in the context of the reason for the visit. And where there is honest doubt as to the purpose of the visit, the issue is for the jury to decide.

Even though the plaintiff said, by way of her deposition, that the object of her visit was to pick up eggs, and she thought she would not have stopped had she not needed them, her primary purpose in visiting the Smith residence was not as clear cut or definitive as might be desired. Under all the prevailing circumstances of this case we believe the issue should have been left to the jury.

The judgment of the court below is reversed with directions to set aside and vacate the summary judgment entered in favor of the defendants and to proceed with trial of the action in a manner consistent with the views here expressed.