No. 52,998

ELLA MAY BRITT, *Appellant,* v. ALLEN COUNTY COMMUNITY JUNIOR COLLEGE, *et al., Appellees.*

(638 P.2d 914)

*Michael D. Gragert,* of Wichita, argued the cause and was on the brief for the appellant.

*Christopher Randall,* of Turner & Boisseau, Chartered, of Wichita, argued the cause and was on the brief for the appellees.

*Robert E. Keeshan,* of Scott, Quinlan & Hecht, of Topeka, was on the *amicus curiae* brief for the Kansas Trial Lawyers Association.

The opinion of the court was delivered by

FROMME, J.: Plaintiff Ella May Britt was injured on the premises of the Allen County Community Junior College when a piano was being moved. The piano overturned and struck her foot, resulting in injuries.

At the time of the occurrence, Britt was a sales supervisor for Shaklee, a company which merchandises nutritional, household, and skin care products. These products are sold and distributed at meetings arranged by Shaklee sales representatives. The income of these sales representatives and of the supervisors, such as Britt,

is based on a percent of total sales. In September, 1977, Britt and another supervisor for the company set up a booth at the Allen County Fair. After the fair was over, Britt and the other supervisor decided to follow up the contacts they had made at the fair by holding a meeting at the defendant college.

Britt called the college, and the lecture hall was scheduled for her use at no charge. She arranged for a speaker to talk on the subject of good nutrition and notified the general public by telephone calls and newspaper advertising of the meeting at the college. One of the purposes of the meeting was to let the audience know about Shaklee products. These would be on display in the lecture hall and Britt expected an increase in sales of her products as a result of the meeting.

Britt and her sister arrived at the lecture hall on the appointed day in advance of the meeting time. They had brought various Shaklee products with them to be displayed on tables. They discovered there were no tables on which to display their products. Britt contacted a college official for assistance. Glenn Delaplain, a custodian, arrived and asked Britt if he could help. In addition to moving tables into the lecture hall, Delaplain was asked to move a piano from the center of the room to an adjacent wall. While the piano was being moved it overturned striking plaintiff on the foot, resulting in injuries. This action was then filed and discovery was completed.

On motion of defendant the trial court determined as a matter of law that plaintiff was a licensee and that there was no evidence that defendant's agent, Delaplain, acted in a wanton or reckless manner. The district court granted summary judgment in favor of the defendants and plaintiff appeals.

The plaintiff-appellant first contends the adoption of comparative negligence, as codified in K.S.A. 60-258a, has modified the traditional rules on the duties of landowners to entrants on land. The rules on premises liability which are dependent on the status of persons entering the premises were summarized in *Gerchberg v. Loney,* 223 Kan. 446, 576 P.2d 593 (1978), as follows:

"Under the present law of Kansas a trespasser is one who enters on the premises of another without any right, lawful authority, or an express or implied invitation or license. The possessor of premises on which a trespasser intrudes owes a trespasser the duty to refrain from wilfully, wantonly, or recklessly injuring him. *(Frazee v. St. Louis-San Francisco Rly. Co.,* [219 Kan. 661, 549 P.2d 561 (1976)]. See also PIK 2d [Civil] 12.20 and 12.21.)

"A licensee is one who enters or remains on the premises of another by virtue of either the express or implied consent of the possessor of the premises, or by operation of law, so that he is not a trespasser thereon. The possessor of premises on which a licensee intrudes owes a licensee the duty to refrain from wilfully or wantonly injuring him. *(Graham v. Loper Electric Co.,* 192 Kan. 558, 561, 389 P.2d 750; *Weil v. Smith,* 205 Kan. 339, 469 P.2d 428. See also PIK 2d [Civil] 12.10 and 12.11.) The parties agree that Rolf Gerchberg was a licensee under the facts of this case.

"Under the law in this jurisdiction a social guest has the status of licensee and his host owes him only the duty to refrain from wilfully, intentionally, or recklessly injuring him. *(Ralls v. Caliendo,* 198 Kan. 84, Syl. ¶ 1, 422 P.2d 862; *Duckers v. Lynch,* 204 Kan. 649, 465 P.2d 945.)

"An invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee. The possessor of premises on which an invitee enters owes a higher degree of care, that of reasonable or ordinary care for the invitee's safety. This duty is active and positive. It includes a duty to protect and warn an invitee against any danger that may be reasonably anticipated. *(Weil v. Smith,* supra, Syl. ¶ 3; *Graham v. Loper Electric Co.,* supra, p. 563. See also PIK 2d [Civil] 12.01 and 12.02.)" 223 Kan. at 448-49.

In the subsequent case of *Zuther v. Schild,* 224 Kan. 528, 581 P.2d 385 (1978), written by Mr. Justice Miller, this court again considered discarding the traditional classifications of entrants on the premises of another and declined to do so. The case involved a licensee.

*Gerchberg* and *Zuther* were both decided in 1978, but no question was raised in either of those cases concerning comparative negligence. The comparative negligence statute, 60-258a, was enacted in 1974, and in pertinent part reads:

"(*a*) The contributory negligence of any party in a civil action shall not bar such party or said party's legal representative from recovering damages for negligence resulting in death, personal injury or property damage, if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, but the award of damages to any party in such action shall be diminished in proportion to the amount of negligence attributed to such party."

Appellant Britt argues that the enactment of the above statute modified a landowner's duty to licensees who have entered on the premises. The argument is somewhat hard to follow but she states the existing duty owed to licensees under the traditional status rules results in a blanket immunity to the owner or possessor of the premises. She concludes this is contrary to the purposes of comparative negligence, as found in the statute and in the developing case law. We do not agree.

As pointed out in *Brown v. Keill,* 224 Kan. 195, 197, 580 P.2d 867 (1978), the purposes of the comparative negligence statute, K.S.A. 60-258a, were expressed in the enacting clause when passed by the legislature. The first purpose expressed in the enacting clause is "abolishing contributory negligence as a bar to recovery" and the second is "providing for the awarding of damages on the basis of comparative negligence." L. 1974, ch. 239. This statute treats and is limited to the extent of liability for damages arising from an occurrence. Its purpose is to distribute liability on the basis of causal fault. It does not concern the nature and extent of the duty owed. It concerns itself with the "all or nothing" philosophy which previously attended tort negligence actions when the contributory negligence of the plaintiff, however slight, foreclosed all defendant's responsibility for plaintiff's injuries. The enactment of the comparative negligence statute, K.S.A. 60-258a, did not affect or change the basic duty of a landowner or possessor of premises owed to those persons entering the premises.

An analogous holding was expressed by the Court of Appeals in *Taplin v. Clark,* 6 Kan. App. 2d 66, 69, 626 P.2d 1198 (1981), where that court concluded the comparative negligence statute did not change the basic duties required of drivers and passengers in automobile tort litigation.

Turning to the second issue, we are again asked to consider the premises liability doctrine and repudiate the status categories recognized in *Gerchberg v. Loney,* 223 Kan. 446, and *Zuther v. Schild,* 224 Kan. 528. In *Gerchberg* the court expressed its concern as to the possible effects which would arise in case of repudiation. We said:

"If the traditional classifications are discarded the legal distinctions which have heretofore governed the courts in imposing a particular standard of care are also discarded. In such case the standard, reasonable care under all the circumstances, would have to be applied by the jury to the specific facts of each case. Can a lay jury reasonably be expected to consider the proper relative effect of natural and artificial conditions on the premises which are or may be dangerous, the degree of danger inherent in such conditions, the extent of the burden which should be placed on the possessor of premises to alleviate the danger, the nature, use and location of the condition or force involved, the foreseeability of the presence of the plaintiff on the premises, the obviousness of such dangerous condition or the plaintiff's actual knowledge of the condition or force which resulted in injury? It would appear these considerations should be imparted to the jury if it is to be placed in a position to decide whether reasonable care was exercised by the

possessor of the premises. Otherwise the jury will have a free hand to impose or withhold liability." 223 Kan. at 450.

We note that Professor Carl S. Hawkins of the J. Reuben Clark Law School, Brigham Young University, has researched eighty cases which have been decided by the courts of the country after their jurisdictions have repudiated the status categories in premises liability cases. Hawkins, *Premises Liability After Repudiation of the Status Categories: Allocation of Judge and Jury Functions,* Utah L. Rev. 15 (1981). Professor Hawkins summarizes what the courts have done since California, in *Rowland v. Christian,* 69 Cal. 2d 108, 70 Cal. Rptr. 97, 443 P.2d 561 (1968), repudiated the status categories. He states:

"With approval from most commentators, the California lead was followed in Hawaii, Colorado, the District of Columbia, Rhode Island, New York, New Hampshire, Louisiana and Alaska. Five more states, Minnesota, Massachusetts, Wisconsin, North Dakota and Maine, have repudiated the licensee-invitee distinction but have retained more limited duty rules for trespassers. However, courts in fifteen states have recently declined to overrule the status categories, either by reaffirming the traditional rules, by deferring to the legislature or a higher court to make any change, or by reserving the question for later consideration." Utah L. Rev. at 17.

Case citations in support of the above summary appear in the notes to this law review article and need not be set out here.

After considering the cases processed in the courts after repudiation of status categories, Professor Hawkins reviews various jury control mechanisms which are being utilized in those jurisdictions. He concludes in part:

"1. The preceding discussion reveals that there has not been wholesale abandonment of premises liability cases to jury caprice. Of eighty cases surveyed in jurisdictions that have abolished the status categories, thirty were withheld from juries by directed verdicts or other summary disposition.

"2. The techniques of case-by-case determination most often used to withhold cases from juries after repudiation of the status categories were: (1) that the defendant owes the plaintiff no duty of reasonable care or that the duty does not extend to the particular risk; and (2) that there was insufficient evidence of negligence. These techniques are well developed in general negligence practice. Occasional resort to the murky dialectic of 'proximate cause' is regrettable but no more of a problem in premises liability cases than it is in negligence cases generally.

"3. Those cases that have been withheld from juries after repudiation of the status categories cannot be explained simply by reference to the type of entrant, the type of landowner or possessor or the type of premises on which the injury occurred. If there is a feature that tends to explain these cases, it would have to be

stated very generally in terms of the risk situation. Compared with the fifty cases that reached juries, the thirty cases withheld from them involved proportionately higher frequencies of third-party hazards, natural condition hazards, common and obvious conditions, plaintiff's risky conduct, or bizarre events and proportionately lower frequencies of hidden or latent conditions, and hazards created immediately by defendant's active operations. Since these differences are only relative, it is probably necessary to take into account the court's assessment of further considerations such as the magnitude of the risk, the gravity of harm, the burden of prevention and the significance of the plaintiff's contributory conduct in the particular circumstances of each case. If that is so, the disposition of the cases appears to be consistent with the handling of negligence cases generally, and the incidence of jury control is consistent with the reform logic that the nature of the entrant's conduct should be considered in evaluating the risk situation, and not just the status of the entrant." Utah L. Rev. at 53-56.

As to comparative results in the eighty cases surveyed, Professor Hawkins concludes:

"1. In a majority of the cases surveyed the outcome would probably be the same as if the status rules had been applied." Utah L. Rev. at 56.

It seems apparent from the findings resulting from the above survey of cases, that courts still find it necessary to fix the limits of premises liability even after they have repudiated the status categories of entrants on land. The professor, agreeing with a conclusion expressed in Henderson, *Expanding the Negligence Concept: Retreat from the Rule of Law,* 51 Ind. L. J. 467 (1976), states "that in the absence of some structure for fixing the limits of premises liability, the law would be reduced to 'a conceptual conduit through which all cases are funneled into the jury room.' " Utah L. Rev. at 61.

Again, after reconsideration, a majority of the members of this court do not feel that the landowner's duty to licensees in the traditional premises law of this state should be changed. The possessor of premises on which a licensee enters owes the licensee a limited duty to refrain from willfully or wantonly injuring the entrant. *Zuther v. Schild,* 224 Kan. at 529.

The appellant's third contention is that this court should recognize an active negligence exception to a landowner's duty to a licensee.

This court has in the past considered and refused to recognize an active negligence exception in premises cases. See *Gerchberg v. Loney,* 223 Kan. at 453. With the advent of comparative negligence, distinctions between active and passive negligence appear out of step in tort negligence actions with the percentages

of causal responsibility with which the court and jury must deal. *Kennedy v. City of Sawyer,* 228 Kan. 439, Syl. ¶ 6, 618 P.2d 788 (1980). This change in concepts occurs in cases involving indemnification as previously recognized in *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, 428 P.2d 783 (1967). In *Kennedy v. City of Sawyer,* 228 Kan. 439, Syl. ¶ 5, it was held:

"The statutory adoption of comparative negligence in Kansas has the effect of abrogating the concept of indemnification based on the dichotomy of active/passive negligence as conceptualized in *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, 428 P.2d 783 (1967)."

After considering the changes wrought by the advent of comparative negligence in Kansas, this court continues to refuse to recognize an active negligence exception to the traditional landowner's duty to a licensee.

The fourth point urged by appellant concerns the determination as a matter of law that appellant was a licensee. It is argued that the college received a benefit from appellant's use of the premises; that the purpose of the meeting was not to solicit customers but rather to provide a forum for free education to the general community. Appellant argues she was, therefore, a public invitee.

We find appellant's argument in this regard unconvincing. In *Smith v. Board of Education,* 204 Kan. 580, 464 P.2d 571 (1970), the Home Demonstration Unit of the Montgomery County Agricultural Extension Program arranged to have a meeting in the basement of the high school building. Plaintiff in that case proceeded down a stairs leading to the meeting room and slipped and fell. It was held she was a licensee, not an invitee. At page 586 of the opinion it is pointed out that one entering premises on invitation does not enjoy the status of an invitee unless the entry is made in connection with the business or purposes of the owner.

Meetings of organized groups are frequently held on premises made available gratuitously by a business establishment or by a government agency. The courts hold generally that those attending are considered licensees. 62 Am. Jur. 2d, Premises Liability § 115, pp. 381-82. "The benefit necessary to convert a licensee to an invitee is ordinarily a business, economic, pecuniary or commercial benefit." *Zuther v. Schild,* 224 Kan. at 529.

It is clear from the deposition testimony that the use of the lecture hall in this case provided no benefit to the college. This

meeting was no part of the college activities. It was not under the auspices or sponsorship of the college. The invitations to and the notice of the meeting were initiated by appellant. There can be little doubt that appellant's primary motive in obtaining the lecture hall and the speaker was to attract people interested in nutrition who might also be interested in the nutritional benefits of Shaklee products. Under these undisputed facts we hold that appellant was a licensee.

The final point argued by appellant relates to failure of the court to allow the case to go to a jury on the question of willful, wanton or reckless misconduct.

In *Vaughn v. Murray,* 214 Kan. 456, 460, 521 P.2d 262 (1974), the test of gross and wanton negligence was iterated:

"Proof of a willingness to injure is not necessary in establishing gross and wanton negligence. This is true because a wanton act is something more than ordinary negligence but it is something less than willful injury. To constitute wantonness the act must indicate a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the natural consequences of the actions of the negligent party. (*Saunders v. Shaver,* 190 Kan. 699, 701, 378 P.2d 70; *Mann v. Good,* 202 Kan. 631, 634, 451 P.2d 233; *Pickens v. Maxwell,* 203 Kan. 559, 456 P.2d 4.)"

At the time of the accident in the present case, three people were present: Ella May Britt, Pauline Mitchell, and Glenn Delaplain. All were deposed during the course of discovery. There is nothing in the testimony of any of these people from which a jury could find that Delaplain acted in a willful, wanton, or reckless manner.

Britt testified she told the custodian that she wanted the piano moved out of the center of the room. Her back was to the custodian when he grabbed the piano and began manuevering it. She heard a noise which caused her to turn around. She saw the piano falling to the floor just before it struck her foot. Her testimony is devoid of any suggestion that the custodian acted in a willful, wanton, or reckless manner.

Mitchell, the plaintiff's sister, testified that she witnessed the accident. She was seated in a chair facing the center of the room. Directly in her view were her sister, the custodian and the piano. She heard her sister tell the custodian to move the piano. She saw the custodian place both hands on the piano. She watched as the

custodian began moving the piano. It appeared to her that the piano wheels caught on something, causing the piano to fall. Her testimony also lacks any evidence to establish that the custodian acted wantonly or recklessly.

Delaplain, the custodian, testified that he grabbed the piano with both hands and began pulling it when it suddenly tipped over. He did not know what caused it to fall. He testified that he had moved the piano on many prior occasions in the same manner and the piano had never fallen over.

The testimony of these three people fails to establish that the custodian knew injury was likely or probable from his act of moving the piano or that he acted with reckless disregard of the consequences.

To constitute wanton or reckless conduct, there must be evidence to establish a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences. Since the testimony of the three witnesses failed to establish the essential elements of wanton and reckless conduct, the district court properly ruled in the defendant's favor.

The judgment is affirmed.

PRAGER, J., dissenting. I respectfully dissent as to syllabi 2, 3, and 4 and corresponding portions of the opinion. This case involves the question of the duty owed by a land occupier to a licensee. I would hold that, as to invitees and licensees, this court in this case should abolish the status classification system and establish a rule that the standard of a land occupier's duty to all persons who come upon the premises with his consent is ordinary care under the circumstances. This position was the basis for my dissenting opinion in *Gerchberg v. Loney,* 223 Kan. 446, 576 P.2d 593 (1978). Since *Gerchberg* was decided, the Supreme Judicial Court of Maine in *Poulin v. Colby College,* 402 A.2d 846 (Me. 1979), has abolished the distinction between licensees and invitees, holding that a landowner owes the same duty of reasonable care under the circumstances to all persons lawfully on the land with the permission of the occupier.

After *Gerchberg* was decided, that decision was reviewed in *Survey of Kansas Law: Torts,* by Professor William Edward Westerbeke in 27 Kan. L. Rev. 321, 338-40 (1979), and also in *Torts: Landowner Liability and Attractive Nuisance—Kansas*

*Rejects the Modern Trend,* an article by Eugenia K. Godfrey in 18 Washburn L. J. 190 (1978). In both of these law review articles, the legal doctrine which distinguishes between licensees and invitees is criticized as being anachronistic and basically unjust because it permits a landowner to evade a fundamental legal duty which should be placed upon all citizens to exercise ordinary care under the circumstances to prevent injury to other persons.

In the majority opinion, Justice Fromme discusses in some depth the analysis of Professor Carl S. Hawkins in *Premises Liability After Repudiation of the Status Categories: Allocation of Judge and Jury Functions,* Utah L. Rev. 15 (1981). In this article Professor Hawkins reviews the development of the law in those states which have repudiated the licensee-invitee distinction. He correctly points out that there has not been an abdication by the courts of their responsibility to prevent groundless cases from going to the jury and that this has been accomplished by the simple device of ruling in clear cases that the defendant was not negligent as a matter of law under the circumstances. This is a technique which is used quite frequently in general negligence practice. The point of Professor Hawkins is not that there is no justification for the abolition of the status classifications. His point is that the abolition of the classifications has not resulted in uncontrolled findings of liability on the part of property owners, because, in applying the reasonable man standard, the courts have applied the usual protections and safeguards customarily applied in other types of negligence cases.

The manifest injustice of the distinction between invitees and licensees is well illustrated by the present case. If the plaintiff, Ella May Britt, had been on the premises attending a lecture sponsored by the junior college on another evening and had been injured as the result of the negligence of its employee, she could have recovered for those personal injuries. Her trouble is that she went to the auditorium on the wrong night. Although she may have been injured in the same way by the negligence of an employee of the junior college, the majority have held that she is completely without remedy because she did not have the status of an invitee, since the program was not being sponsored by the junior college. The inherent injustice of the invitee-licensee differentiation becomes quite obvious in this case. For these reasons, I respectfully dissent.

HERD, J., joins the foregoing dissenting opinion.