MARYLAND CASUALTY CO. *v.* TURNER.

5-2811                                                          361 S. W. 2d 646

Opinion delivered November 12, 1962.

*S. Hubert Mayes* and *S. Hubert Mayes, Jr.,* for appellant.

*Griffin Smith,* for appellee.

NEILL BOHLINGER, Associate Justice. The appellee, Yancy B. Turner, was the holder of a contract from

United States Corps of Engineers for certain revetment work on the Arkansas River at a place known as Brown's Bend.

In order to comply with his contract, the appellee entered into a contract with the Mississippi Valley Engineering and Construction Company to furnish the rock requirements for the job, delivered in place on the job site. It appears that the Mississippi Valley Engineering and Construction Company produced the stone at a quarry near Sweet Home and, having no trucks, the Company entered into a contract, or hired trucks, to accomplish that part of its contract with the appellee whereby it was to deliver the rock to the appellee's barges or on the banks at the site of the work.

One of the trucks, the one involved in this case, was owned by a man named Koch and driven by a man named Freeman. It does not appear that the appellee was a party to the contract between the Mississippi Valley Engineering and Construction Company and its haulers and therefore we treat the hauling merely as a part of the work to be performed and the activity of Mississippi Valley.

The activities of the appellee were covered by a general liability policy issued by the Maryland Casualty Company, the appellant here. On August 8, 1960, the truck owned by Koch and driven by Freeman was being lowered over the slope of the river bank to enable the dropping of its load of rock at a point designated by the appellee. While the truck was thus being lowered over the bank and while an employee of the appellee was assisting in scraping the rock out of the truck, the bulldozer owned by the appellee, to which the truck in question was connected by means of a cable, slipped back over the river bank and the truck fell into the river and was damaged thereby.

Koch brought suit against the appellee in the Pulaski Circuit Court to recover damages to his truck. The appellee called upon his insurance carrier, appellant here, to defend him under the terms of the general comprehensive liability policy which he alleged was in force at the

time of the accident. Appellant refused to defend on the grounds of a policy exemption which exempted from coverage damage to "tools or equipment while being used by the insured in performing his operations." The appellee then filed the present suit for a declaratory judgment in the Pulaski Circuit Court and that court found in favor of the appellee and held that the Maryland Casualty Company was obligated to defend Turner in this case but denied Turner's request for penalty and attorney's fee. From that judgment the appellant prosecutes this appeal. Appellee cross-appeals from the trial court's denial of attorney's fees.

This brings squarely before us the question as to whether or not the truck which was damaged was being used by the appellee in his operation at the time of the accident. The exemption relied on is that the policy does not apply to damage to "tools or equipment being used by the insured in performing his operations." The word *"Used"* is, to some extent, employed by insurance companies as a substitute for the phrase "care, custody, and control," in exemption clauses in liability policies. In the case of *Hardware Mutual Casualty Co.* v. *Crafton*, 233 Ark. 1020, 350 S. W. 2d 506, we said:

"The care, custody and control clause in liability policies, so far as our research has extended, appears to be almost universally used but its construction is, to a large extent, dependent upon circumstances of each case and we conclude that the phrase should be applied with common sense and practicality."

Therefore, approaching the construction of the phrase with common sense and practicality, we make use of the following quotation from *Great American Indemnity Co. of N. Y.* v. *Saltzman*, 213 F. 2d 743, which was a federal case applying Arkansas law and which case is cited in the *Crafton* case, *supra*:

"Of course if the term 'use' is construed to embrace all its possible meanings and ramifications, practically every activity of mankind would amount to a 'use' of something. However, the term must be considered with regard to the setting in which it is employed."

So in order to arrive at the setting in which the term is used, we revert to the contract between the appellee and the Mississippi Valley Engineering and Construction Company which contains these two applicable provisions:

"(1) Miss. Valley Engineering & Construction Co. agrees to furnish all labor, equipment, materials, supplies and other necessary items to produce and furnish approximately 42,500 tons of quarry-run stone with fines. Said quarry-run stone to be delivered to Yancy B. Turner's barges by trucks or dumped on the bank from trucks as designated by Yancy B. Turner.

(2) Yancy B. Turner, Contractor shall furnish the scales and the necessary men and equipment to dump the rock from the trucks to the barges, and/or on the bank as designated."

From these provisions in that contract it is evident that Mississippi Valley was bound by its solemn commitment to deliver the stone by truck to the appellee's barges or to dump the stone on the bank from trucks as designated by the appellee. It was Mississippi Valley's stone **from the time** it was quarried until it was placed at the point designated by appellee, Turner. To hold that paragraph two (2) would be controlling we would have to hold that the appellee's commitment to furnish the necessary men and equipment to dump the rock from the trucks to the barges or onto the river bank would completely nullify the Mississippi Valley's commitment to dump the rock where Turner designated. This dumping the rock where Turner designated was a service for which Mississippi Valley was to be paid and it therefore appears that the appellee's commitment to furnish men and equipment was merely to facilitate the Mississippi Valley Company in making its delivery of the rock and was not intended to and did not give the appellee the use, care, custody and control of the truck involved. The idea that appellee's commitment was to furnish men and equipment is, under the circumstances, incompatible with the obligation of the Mississippi Valley which was to put the stone in place.

It appears that some defect in the unloading apparatus of the truck here involved became apparent before

the truck was lowered over the slope and the appellee's men, acting under provision two (2) of the contract, lent their assistance in correcting that defect but that is not taking control of the truck. An analogous situation would be if the truck had mired down at the site and the appellee's men and equipment pulled it out, or changed a tire. These things would not give to the appellee the use of or the care, custody or control of the truck. This concept is strengthened by the case of *Boswell* v. *Travelers Indemnity Company*, 120 A. 2d 250, 38 N. J., Super. 599, where the court said:

"* * * that an insured 'uses' property within the meaning of the exclusion clause only where he puts it to his own service or to the purpose for which it was ordinarily intended."

The purpose for which Mississippi Valley and its subcontractor were using the property was to comply with provisions one (1) of the contract between appellee and Mississippi Valley. That was the purpose for which it was intended and for which it was being used and the trial court properly found that the truck in question was not being used by the appellee.

The appellee, among other things, asked that he be allowed an attorney's fee. The trial court denied this prayer and in that the court was in error. Section 66-3239, Ark. Stats. provides as follows:

"In all suits in which the judgment or decree of a court is against a life, fire, health, accident and liability insurance company, either in a suit by it to cancel or lapse a policy or to change or alter the terms or conditions thereof in any way that may have the effect of depriving the holder of such policy of any of his rights hereunder, or in a suit for a declaratory judgment under such policy, or in a suit by the holder of such policy to require such company to reinstate such policy, such company *shall also be liable to pay the holder of such policy all reasonable attorneys'* fees for the defense or prosecution of said suit, as the case may be, which fees shall be based on the face amount of the policy involved; said attorneys' fees to be taxed by the court where the same is heard on original

action, by appeal or otherwise, and to be taxed up as a part of the costs therein and collected as other costs are, or may be by law collected." [Emphasis added]

Attorneys' fees in these types of cases are specifically provided for in the statute and should have been allowed by the trial court. In the case of *David H. Curran* v. *Security Insurance Company,* 195 F. Supp. 562, which was an application for a declaratory judgment under Arkansas law, United States District Court for the Western District of Arkansas said:

"In view of the conclusion that the court has reached, the plaintiff is entitled to recover a reasonable attorney's fee, and the court, even in the absence of testimony as to the amount of such fee, may fix the same based upon the record before it."

In 5 Am. Jur., Attorneys, § 190, p. 376, it is stated:

" * * * The services of an attorney, when rendered in litigation before the same court which is passing upon the value of such services, may, of themselves, constitute evidence from which the court alone, unaided by opinion of others as to value, or even in defiance of opinion evidence, may reach a conclusion."

The right to fix the fee of appellee's attorney is in either the trial court or this court. We have reviewed the record in this case, which involves $2,525.00, and we find that a fee of $500.00 should have been allowed appellee's attorney for services in the trial court and here on appeal. There can, of course, be no penalty or interest.

This judgment is therefore modified to the extent of allowing a $500.00 fee to appellee's attorney and is in all other respects affirmed.