No. 45,105

Robert Buchanan and Oren Buchanan and C. W. Roweth, *Appellees*, v. Employers Mutual Liability Insurance Company of Wisconsin, *Appellant*.

(443 P. 2d 681)

Opinion filed July 13, 1968.

*John J. Alder,* of Kansas City, argued the cause, and *H. S. Roberts,* also of Kansas City, was with him on the brief for the appellant.

*John C. Risjord,* of Kansas City, Missouri, argued the cause, and *George W. Thomas,* of Kansas City, Kansas, was with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This case involves a dispute over insurance coverage. The plaintiffs, who are construction contractors engaged in a joint venture, entered into an agreement with the Ace Construction Company to quarry and supply rock for a levee being built by Ace at the Oologah Reservoir project in Oklahoma, under contract with the government. After securing its subcontract with Ace, the prime contractor on the project, the plaintiffs took out a policy of insurance with the defendant, Employers Mutual Liability Insurance Company of Wisconsin, to protect themselves against liability for personal injury or property damage resulting from their fault or negligence.

During the course of construction, a dump truck used in hauling

rock and owned by Gordon Ensley, the plaintiffs' subcontractor, was damaged in an accident which happened at the work site. The details of this unfortunate occurrence will be related shortly.

The defendant insurance company denied liability under the terms of its policy and refused to defend an action brought by Ensley for damages to his truck. Ensley recovered judgment in his lawsuit against the plaintiffs, who have since paid the judgment, and who now bring this action against Employers to recover damages for its refusal to pay for Ensley's damage. In this action the plaintiffs ask also for an allowance of attorneys' fees. Plaintiffs recovered judgment in the lower court for both damages and attorneys' fees, and the defendant has appealed. Throughout the opinion we shall refer to the appellant insurer as the defendant, or Employers, and to the appellees, the insured, as plaintiffs.

There is little dispute over the facts of the accident. The plaintiffs' contract with Ace called for them to quarry the rock and place it on an earth fill which ran across the reservoir. Since they owned no trucks, the plaintiffs subcontracted the hauling and delivery of the rock to Ensley, who owned the truck which was damaged. The contract with Ensley provided that Ensley furnish all labor and equipment necessary to transport the rock in connection with the construction of the project, and obligated Ensley to complete the work in accordance with the requirements of the plaintiffs. The contract contained this further provision:

". . . It is also understood and agreed that, when necessary, loaded trucks may be let down the embankment by equipment furnished and maintained by the Contractor."

As might be expected, the accident involved in this dispute occurred as one of Ensley's trucks was being let down the embankment by plaintiffs' caterpillar, or dozer, by means of a winch mounted thereon. To understand the circumstances under which the accident occurred, a brief description of this phase of Ensley's operation will prove helpful.

The caterpillar was stationed on a roadway, some 20 or 30 feet wide, running along the top of the levee. As each truck reached the roadway it would head directly into and facing the back end of the dozer, where the winch cable would be hooked to the front of the truck. Both tractor and truck would then back to the opposite edge of the road, and the truck, operated by Ensley's driver, would gradually start backward down the face of the levee, its speed being

checked by the winch cable. This procedure is described as "winching a truck down the levee." In this process, the dozer is backed slightly over the edge of the roadway, so the operator can observe the truck as it backs down the levee. When the truck reached the point where the rocks were to be dumped, the driver would set his brakes, dump his load and then be "winched back up." If the driver did not position his truck where his load was to be dumped, he would be winched back up and he would then guide the truck in again.

On the day of the accident, after Ensley's truck was hooked onto the winch, its driver, Kenneth Brownrigg, put the truck in reverse and backed to and over the edge of the roadway, at which time the truck was taken out of gear and the winch line became taut. As the truck backed down the slope, the brakes failed on the treads of the dozer upon reaching the edge of the slope, and the dozer went out of control and down the face of the levee, causing the winch line to slacken and releasing the truck, which rolled to a stop against some rocks about 40 feet down the slope. After the truck came to a stop it was struck by the dozer and was damaged.

To understand the dispute between the parties to this appeal, we must now take a brief look at the policy. Under the heading of Insuring Agreements, Coverage D reads as follows:

"Coverage D—*Property Damage Liability—Except Automobile*. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

This would seem clear enough to cover the damage done Ensley's truck by the plaintiffs' caterpillar. But here we encounter the omnipresent exclusions, of which there are seventeen in all. Thus the policy provideth and the policy taketh away. Under the tenth exclusionary clause, clause (*j*), it is provided that coverage under D does not apply to injury to or destruction of:

"(3) . . . property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control . . ."

Under this exclusionary clause, the defendant declares it is not liable for the damage done Ensley's truck by plaintiffs' dozer. Stripped to bare essentials and disregarding excess verbiage, it is the defendant's position that the facts shown by its assured, the plaintiffs, establish as a matter of law that they were exercising

physical control of Ensley's truck at the time it was damaged. Hence, says the defendant insurer, the exclusionary clause prevails and the damage is not covered under the policy.

We have not heretofore been afforded the opportunity of construing an exclusionary clause of this character, although numerous other jurisdictions have been so favored. In commencing our discussion we are mindful of the rule that insurance contracts, being prepared by the insurer, are to be given a construction most favorable to the insured, in those instances where construction is permissible or interpretation required. In *Jameson v. Farmers Mutual Automobile Ins. Co.*, 181 Kan. 120, 309 P. 2d 394, the court said:

". . . As early as in *Insurance Co. v. Milling Co.*, 69 Kan. 114, 116, 76 Pac. 423, this court said that insurance companies are paid for protection. Their contracts are to be construed, when construction is permissible, most strongly against them and in favor of the insured. Then we find the well-settled rule that where a policy of insurance is so drawn as to require an interpretation, a construction most favorable to the insured will be adopted for the reason that the company prepares the contract of insurance, thereby selecting its own language. (*Brown v. Accident Insurance Co.*, 114 Kan. 337, 338, 219 Pac. 505.) These basic rules were cited in substance and with approval in *Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571, where the court added that as an insurer prepares its own contracts and it is its duty to make the meaning clear, if it fails to do so, the insurer and not the insured must suffer. Stated in another way, if the insurer desires to limit its liability, it should so state in the policy issued. (*Spencer v. Casualty and Surety Co.*, 116 Kan. 491, 494, 227 Pac. 357; *Chicago, R. I. & Pac. Rld. Co. v. Aetna Ins. Co.*, 180 Kan. 730, 308 P. 2d 119.)" (pp. 125, 126.)

The construction of exclusionary clauses falls within the ambit of the rule. In *Milliken v. Fidelity and Casualty Company of New York*, 338 F. 2d 35, the federal court held that an insurer has the burden of proving facts which bring a case within the exclusionary clause of an insurance policy. It was determined in *Boswell v. Travelers Indemnity Co.*, 38 N. J. Super. 599, 120 A. 2d 250, a case which involved a policy which excluded liability for damage to property "used by" or "in the care, custody or control of the insured," that the language of the exclusionary clause was ambiguous, and thus subject to a construction most favorable to the insured. In its opinion the court said:

"[9] Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import. An insurer may, of course, cut off liability

under its policy with a clear language, but it cannot do so with that dulled by ambiguity. As with the provisions of the policy as a whole, so also with the exceptions to the liability of the insured, the language must be construed so as to give the insured the protection which he reasonably had a right to expect; and to that end any doubts, ambiguities and uncertainties arising out of the language used in the policy must be resolved in his favor. *Couch*, § 187, *p.* 390; 1945 *Cum. Supp., p.* 185; 1956 *Supp., p.* 56." (p. 606.)

Although there is authority to the contrary, we are constrained to agree with the rationale of the foregoing cases. The terminology employed by the insurer drafting the exclusionary clause here in question is not so precise or so explicit as to be entirely free from ambiguity. In our opinion, it cannot be said that the exclusionary language in Employers' policy is so exact in meaning that we may hold, as a matter of law, that the damage to Ensley's truck falls outside the coverage of Employers' policy.

The evidence showed that Ensley's drivers at all times remained in the trucks by themselves, as Brownrigg did here; that the drivers could and did steer or guide their trucks as they made their backward descent down the face of the levee in order to arrive at their destination; that the cable used on the winch was furnished and maintained by Ensley; that the truck motors were not turned off during the descent; and that brakes were released until the trucks reached the point where their cargoes were to be dumped, and then were reapplied by the drivers. All this is evidence from which we believe men or normal intelligence might reasonably infer that actual control of the trucks remained in Ensley's drivers even though their speed was restrained or checked by the plaintiffs' caterpillar.

No complaint is made of the instructions, and they have not been reproduced in the record. We therefore assume the jury was properly instructed as to the meaning of the terms used in the exclusionary clause and the application of that clause to the facts in evidence. (*Holt v. Bills*, 189 Kan. 14, 16, 366 P. 2d 1009; *Collins v. City Cab Co.*, 192 Kan. 394, 396, 388 P. 2d 597.)

Implicit in the jury's verdict in plaintiffs' favor is a finding that plaintiffs did not have custody of the truck and were not in control of the same at the time of impact. There is respectable authority to sustain this view. Perhaps the case most directly in point is *Maryland Casualty Co. v. Turner*, 235 Ark. 718, 361 S. W. 2d 646, where Turner had a contract for revetment work along the Arkansas

River. Turner contracted with Mississippi Valley Engineering and Construction Company to furnish the rock required on the job. The Mississippi Valley Company quarried the rock, but having no trucks of its own, contracted with various truckers to do the hauling. A bulldozer owned by Turner was used to lower the trucks by cable over the river bank to the place where the rock would be unloaded.

As one of the trucks, owned by Koch, was being lowered over the bank, Turner's bulldozer slid into the river and Koch's truck, attached to the dozer by cable, fell into the river and was damaged. Koch sued Turner, but Turner's insurance carrier refused to defend the lawsuit and denied liability on the ground of an exclusionary clause, similar to Employers', which exempted from coverage "damage to tools or equiment while being used by the insured in performing his operations."

Turner thereupon brought suit against his insurer for a declaratory judgment. In affirming a judgment for Turner which was entered by the trial court, the Supreme Court of Arkansas held that Turner's commitment to furnish men and equipment to help unload the trucks did not give him the use, care, custody and control of the trucks. In the course of its opinion the court said:

". . . The word *"Used"* is, to some extent, employed by insurance companies as a substitute for the phrase 'care, custody, and control,' in exemption clauses in liability policies. In the case of *Hardware Mutual Casualty Co. v. Crafton*, 233 Ark. 1020, 350 S. W. 2d 506, we said:

" 'The care, custody and control clause in liability policies, so far as our research has extended, appears to be almost universally used but its construction is, to a large extent, dependent upon circumstances of each case and we conclude that the phrase should be applied with common sense and practicality.'

"Therefore, approaching the construction of the phrase with common sense and practicality, we make use of the following quotation from *Great American Indemnity Co. of N. Y. v. Saltzman*, 213 F. 2d 743, which was a federal case applying Arkansas law and which case is cited in the *Crafton* case, *supra:*

" 'Of course if the term "use" is construed to embrace all its possible meanings and ramifications, practically every activity of mankind would amount to a "use" of something. However, the term must be considered with regard to the setting in which it is employed.' " (p. 720.)

In concluding that the damage to Koch's truck did not fall within the exclusionary clause of the policy, the court phrased its decision in these words:

". . . This dumping the rock where Turner designated was a service for which Mississippi Valley was to be paid and it therefore appears that the appellee's commitment to furnish men and equipment was merely to facilitate

the Mississippi Valley Company in making its delivery of the rock and was not intended to and did not give the appellee the use, care, custody and control of the truck involved. . . ." (p. 721.)

An earlier Arkansas case, *Hardware Mutual Casualty Co. v. Crafton*, 233 Ark. 1020, 350 S. W. 2d 506, involved damage to an automobile which rolled into a lake. A piscator named Anderson drove his car to Crafton's boat dock, unloaded his fishing paraphernalia, and left his car in the driveway. Crafton later moved the car to a parking area and had walked about 40 feet away when the car began to roll and went into the lake. Crafton's insurance carrier denied liability by virtue of a clause which excluded damage to "property in the care, custody or control of the insured or property as to which the insured, for any purpose is exercising physical control." It will be noted this language parallels that in Employers' policy.

In holding that the exclusionary clause did not exempt the insurance company from liability for the damage done to Anderson's car, the Court observed:

"In the instant case the only contract that existed between Crafton and the car owner was that Crafton was to rent dock facilities and a boat to the car owner in order that the car owner might go out on the lake and catch some fish, or endeavor so to do. The presence of the automobile on Crafton's property was merely incidental and the only connection Crafton had with the car was access thereto." (p. 1024.)

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

". . . Whatever his purpose in moving the car from the driveway to a parking area, that purpose had been completed and Crafton had left the car, turned his back upon it and walked some distance to engage in business of his own. He was some forty feet from the car but not directing it in any way, was not driving or steering it, and under the facts we are unwilling to say that he was exercising care, custody or control of the property or that he was physically controlling it at the time it was damaged. . . ." (p. 1025.)

*Maryland Casualty Co. v. Golden Jersey Creamery*, 389 S. W. 2d 701 (Tex. Civ. App.) is a third case with similar overtones. Golden Jersey Creamery maintained a raised concrete ramp outside its building which was used by truckers in unloading their cargoes of milk. The usual unloading procedure was for a driver to stop his truck on the ramp and hand to a creamery employee a hose and an electric cord which operated a pump affixed to the tank, and then for the driver to open a vent so air could replace the milk being pumped out of the tank.

On the occasion in question one of the truckers drove his truck

on the unloading ramp and left it there for the night. One of the defendant's employees, needing milk from the truck, followed the customary unloading procedure, but for some unexplained reason the air vent remained closed, and the tank collapsed. The damage done to the truck was settled by the creamery, but its insurance carried disclaimed liability on the basis of an exclusionary clause which, like the instant clause, exempted damage to property while in the care, custody and control of the insured or property as to which the insured was exercising physical control for any purpose. Thereupon the creamery sued the insurer.

The jury, in answer to a special question, found the tank truck was not under the care, custody or control of the creamery, or any of its employees, and judgment was entered for the creamery. In affirming the judgment, the court cited a number of related cases, and went on to say:

"The words 'care, custody and control' have been held to mean 'in charge of' or 'in charge' by the decisions. See Great American Indemnity Co. of New York v. Saltzman, 213 F. 2d 743 (8th Cir. 1954), in which, at page 748, the Court said:

" 'While the word "charge" has a very broad and varied meaning (McLoughlin v. Shaw, 95 Conn. 102, 107, 111 A. 62), a person or thing is not "in charge of" an insured within the meaning of the policy unless he has the *right to exercise dominion or control over it.*' (Emphasis supplied by the Court)." (pp. 703, 704.)

In concluding its opinion, the court summed up the situation in this way:

". . . In this case, the fact that an employee of appellee would receive from the driver of the milk tank-truck a hose connected to the tank and an electric cord for supplying power to the pump on it, would not conclusively place the tank-truck in the care, custody and control of appellee. These steps were merely incidental to the receipt of milk by appellee, which was a necessary function in the operation of its business on the premises. Neither would the conduct of Salinas on the occasion of the damage to the tank-trailer here involved establish as a matter of law that it was in the care, custody and control of appellee. The trial court correctly submitted the controlling issue to the jury in this case and it was found favorably to appellee. The evidence is sufficient to support such finding . . ." (pp. 704, 705.)

It is our opinion the trial court properly submitted to the jury the issue as to whether or not Ensley's truck was under the care, custody and control of plaintiffs, or was property as to which the insured was exercising physical control. By its verdict the jury answered that question in the negative and it is our opinion the judgment must be affirmed.

The defendant vigorously objects to the assessment of attorney fees. The main thrust of the argument is that the fee of $1,000 was awarded without evidence, in violation of K. S. A. 40-256 which authorizes the allowance of attorneys' fees "if it appear from the evidence that such company . . . has refused without just cause or excuse to pay." In *Thompson Transport Co. v. Middlestates Construction Co.*, 195 Kan. 172, 403 P. 2d 999, we said that "This statute requires the insured to prove by a preponderance of the evidence that the insurer refused to pay 'without just cause or excuse.'"

In examining the record we find that a motion for attorneys' fees was filed by the plaintiffs on April 18, 1967, the same day the jury returned its verdict. The journal entry reveals that this motion was argued on May 12, 1967, but the record is silent as to what, if any, evidence was presented. The defendant asserts in its brief that no evidence was introduced, while plaintiffs' counsel advised us on oral argument that evidence was introduced supporting the motion and that, in addition, a stipulation was entered by the parties in regard thereto.

Under the provisions of Rule No. 6 (197 Kan. LXI) it is the responsibility of the respective parties on appeal to designate those parts of the evidence they wish to have included in the record. Subparagraph (n) of the rule, further provides that in the event no stenographic record was made, the *appellant* may prepare a statement of the evidence from the best means available. Failure of the parties to disclose in the record what evidence was presented on the motion for fees, leaves us with no means to judge its sufficiency or quality.

Assuming, however, that no evidence was presented on plaintiffs' motion, the trial court was not without evidence on the subject of fees. The court officiated at the trial of plaintiffs' case on the merits and was in a position to evaluate the evidence which was introduced at the trial, in determining whether an attorney's fee should be allowed.

Although we have said in *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 704, 366 P. 2d 219, that whether an insurer has refused to pay without just cause is an independent issue, the evidence as to which need not be at a hearing on the merits or coincide with evidence produced at that time, we have never meant

to indicate that evidence on this point may not be heard at the trial on the merits or that the court might not base its decision thereon. To the contrary, in *Thompson Transport Co. v. Middlestates Construction Co.*, supra, we stated that the language used in Wolf inferentially recognizes that "the evidence, to determine whether an insurance company has refused without just cause or excuse to pay in accordance with its obligation, may be produced at the hearing on the merits and coincide with the evidence produced at such hearing."

We cannot say, from the record before us, that the trial court erred in its finding that Employers' refusal to pay was without just cause. The court heard the testimony of the several witnesses, including one of the three plaintiffs, who testified that to his knowledge "there was never any investigation made by the insurance company." The trial judge was in a position to observe the witnesses upon the stand and to evaluate their evidence, as well as to assess the situation in its totality from all the evidence. Further analysis of the evidence on our part within the framework of existing law would merely prolong this opinion without adding anything of value to our published reports.

A complaint by Employers that the fee is excessive and unsupported by evidence, is without merit. Our cases hold that the trial judge himself is an expert in the area of attorneys' fees and can draw on his own knowledge and expertise in evaluating their worth. In *Wolf v. Mutual Benefit Health & Accident Association*, supra, we said:

"While the trial court should give due consideration to the opinions of the expert witnesses as to the value of legal services, it is not controlled by such evidence, as the trial court itself is an expert on this subject and may apply its own knowledge and professional experience in determining the value of the legal services rendered. (*Epp. v. Hinton*, supra, Syl. ¶ 4.)" (p. 714.)

The reasonable value of attorneys' fees rests largely within the sound discretion of the trial court, and its determination will not be disturbed in the absence of an abuse of discretion. In this connection we have said that appellate courts, as well as trial courts, are experts as to the reasonableness of attorneys' fees and may, in the interest of justice, fix counsel fees when in disagreement with views of the trial judge. (*Wolf v. Mutual Benefit Health & Accident Association*, supra; *Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 163 P. 2d 389.)

Considering, among other matters, the amount involved in this lawsuit, and the time required for trial and presentation of the post-trial motions, we cannot say that the fee is excessive or that the trial court abused its discretion in setting the amount.

The judgment of the lower court is affirmed.