No. 47,295

ADVENTURE LINE MANUFACTURING COMPANY, INC., a Kansas Corporation, *Appellant*, v. THE WESTERN CASUALTY AND SURETY COMPANY, a Kansas Insurance Corporation, *Appellee*.

(522 P. 2d 359)

Opinion filed May 11, 1974.

*Jack L. Goodrich*, of Parsons, argued the cause and was on the brief for the appellant.

*Richard C. Dearth*, of Jones & Dearth, Chartered, of Parsons, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This action was brought on a comprehensive liability insurance policy to recover the amount of a judgment previously entered against the plaintiff, Adventure Line Manufacturing Company, Inc. Adventure Line paid the judgment and now sues its insurance company, The Western Casualty and Surety Company. Western Casualty defends the action on the basis of an exclusionary clause in the policy which excludes coverage on property "in the care, custody or control of the insured". The case was tried to the court below on a stipulated record and the court entered judgment in favor of the defendant, Western Casualty. The plaintiff, Adventure Line, appeals.

This is the third action arising from the fire which destroyed the manufacturing plant of Adventure Line in Parsons, Kansas, on December 9, 1968.

The first action involved the question of coverage under this same policy. The case was brought by the employees of Adventure Line to recover the value of their personal tools destroyed in the fire. In *Arnold v. Western Casualty & Surety Co.*, 209 Kan. 80, 495 P. 2d 1007, it was held the employees' tools were not in the care,

custody or control of Adventure Line when the fire broke out and that the insurance company was liable under its policy for the employees' personal tools.

The second action involved the tort liability of Adventure Line for the loss of a semi-trailer owned by Campbell Sixty-Six Express, Inc. which was parked at a loading dock on the plant premises of Adventure Line. The semi-trailer was destroyed by fire. In *Campbell Sixty-Six Express, Inc. v. Adventure Line Mfg. Co. Inc.,* 209 Kan. 357, 496 P. 2d 1351, Adventure Line was held liable for the loss of the semi-trailer based on negligence in starting the fire and failing to maintain operable fire extinguishers on the premises. It is the amount of this judgment which Adventure Line now seeks to recover back from the insurance company.

The present case was tried by the lower court upon a stipulation and agreement which reads as follows:

"It is stipulated and agreed by and between the parties, through their respective counsel of record, as follows:

"1. The policy of liability insurance involved in this proceeding was in force and effect on the date of the loss, December 9, 1968.

"2. On said date, a Campbell Sixty-Six trailer was destroyed by fire on plaintiff's plant premises covered by said policy of liability insurance.

"3. The damage to said trailer was recovered against the plaintiff in the sum of $5,091.47, plus court costs in the sum of $651.01 and accumulated interest in the sum of $79.52 for a total recover of $5,822.00. Said sum was paid in to the Clerk of this court in satisfaction thereof.

"4. Timely demand for payment of said sum was made upon defendant by plaintiff. Payment was refused by defendant based upon an exclusionary clause in its policy of liability insurance.

"5. The defendant reserved its right in defending Adventure Line in the suit brought against it by Campbell Sixty-Six for the loss of its trailer. The court may consider the evidence offered and as set forth in the transcript of testimony in the case of Campbell Sixty-Six vs. Adventure Line Manufacturing Company, Case No. 10,384, including the pleadings, and the record the same to be considered as evidence and part of the record in this case, together with the decision of the Supreme Court of the State of Kansas in the appeal thereof, being reported in Kansas Reports at 209 Kan. 357.

"The foregoing stipulation and agreement is herewith jointly submitted and approved by the respective attorneys of record for the parties to this proceeding."

The defense raised by Western Casualty is based upon the following exclusionary clause in the policy:

"This policy does not apply:

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(*h*) Under coverage C, to property damage to  .  .  .  property in the

care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control, . . ."

The liability of the company alleged by Adventure Line is based on coverage C in the policy, "property damage caused by accident and arising out of other than ownership, maintenance or use of automobiles."

After a trial to the court judgment was entered in favor of Western Casualty and against Adventure Line on the following findings:

". . . [T]he court . . . finds generally in favor of defendant and against the plaintiff.

"The court specifically finds from the evidence and record that at the time the Campbell Sixty-Six Express trailer was destroyed by fire it was on the property of plaintiff as a business invitee and by reason thereof plaintiff's claim falls within the exclusionary provisions of the insurance policy issued by defendant.

"The court finds that plaintiff should take naught by its action herein and that plaintiff should pay the costs."

On appeal Adventure Line points out that the controlling question which should have been decided by the trial court was whether the semi-trailer was "in the care, custody or control" of Adventure Line at the time it was destroyed by fire. If it was, there was no coverage under the policy. The trial court did make a general finding of fact in favor of the defendant. Such a general finding by the trial court raises a presumption that the trial court found all facts necessary to sustain the judgment rendered. (*Cason v. Geis Irrigation Co.*, 211 Kan. 406, Syl. ¶ 3, 507 P. 2d 295.) We presume, therefore, that the trial court did find that the semi-trailer was in the care, custody or control of Adventure Line when the fire occurred.

Appellant, Adventure Line, calls our attention to paragraph 2 of the syllabus in *Southards v. Central Plains Ins. Co.*, 201 Kan. 499, 441 P. 2d 808, which reads:

"Where an insurer seeks to avoid liability under its policy on the ground that the circumstances fall within an exception set out in the policy, the burden is on the insurer to establish the facts which bring the case within the specified exception." (Syl. ¶ 2.)

Appellant further quotes at length from the case of *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, 443 P. 2d 681, which involves coverage under a similar policy of insurance. In *Buchanan* it is held:

"The 'care, control and custody clause' frequently found in liability insurance policies is of a generally ambiguous character and must be applied to the facts of each individual case with common sense and practicality, and when the facts do not clearly show that an insured is exercising physical custody, dominion, authority or control over the property at the time of its injury, in the sense of using such property for his own purposes, the issue of whether the property was in the care, custody and control of the insured becomes one for the jury's determination." (Syl. ¶ 5.)

Our attention is also called to *Arnold v. Western Casualty & Surety Co.*, supra. In paragraph 4 of the syllabus of that case this court says:

"When the 'care, control or custody clause' used in a general comprehensive liability policy to exclude portions of the coverage is of a generally ambiguous character such clause should be applied with common sense and practicality on the basis of the evidentiary facts. When it does not conclusively appear that the insured was exercising physical custody, dominion, authority or control over the property at the time of its injury, the question of care, control and custody should be resolved by the trier of fact." (209 Kan. 80, Syl. ¶ 4.)

In its brief appellant concludes that "this is a fact case" and that the "judgment entered by the trial court is not sustained . . . by the evidence." We agree with the law cited by appellant and agree that this is a fact case. We must now examine the evidence before the trial court to determine if there is a basis in the evidence to support the judgment in favor of defendant.

What are the facts in evidence concerning the care, custody or control of the semi-trailer at the time of the fire? The evidence on this point is taken from the transcript of the testimony in *Campbell Sixty-Six Express, Inc. v. Adventure Line Mfg. Co. Inc.*, supra, as stipulated by the parties.

Adventure Line was engaged in manufacturing antipersonnel bombs under contract with the federal government to be delivered to the Kansas Ordnance Plant at Parsons, Kansas. The semi-trailer was owned by Campbell Sixty-Six Express, Inc., a common carrier, who had a contract with the federal government to transfer the manufactured bombs from the Adventure Line plant to the Kansas Ordnance Plant. The bombs were sold to the federal government F. O. B. the Adventure Line plant. When a semi-trailer load was ready for shipment the proper government officials were notified. They in turn advised Adventure Line as to which one of several common carriers was to pick up the shipment. Adventure Line then notified that common carrier. It was the practice for the common carrier to send a tractor-trailer, and the driver would "dolly down"

the trailer at the loading dock on the Adventure Line premises. The doors of the trailer were left open. The trailer was then loaded by the employees of Adventure Line. This took from two hours to twenty-four hours depending on the availability of employees to load the trailer. Generally the tractor which delivered the trailer was unhooked from the trailer and the driver then had his tractor free for other jobs. The trailer involved in the present case was a forty foot aluminum, closed-van trailer. It was seven and a half feet wide, had eight wheels and weighed around 12,000 pounds empty. When a trailer is "dollied down" the landing gear is lowered to the ground to support the trailer while the tractor is removed. The trailer in this case was dollied down at the loading dock and Adventure Line had no tractor of its own with which to move the trailer after it was dollied down at the dock. The employees of Adventure Line had not begun to load the trailer when the fire broke out in the plant. When the fire broke out one of the employees called the Campbell Sixty-Six answering service and tried to get a tractor to move the trailer. The answering service could not locate the driver. The employee then tried to get another carrier to furnish a tractor to move the trailer but failed to do so.

The truck driver who left the trailer at the loading dock testified that he followed the standard procedure in this particular case, that Campbell Sixty-Six had no contract with Adventure Line, that its contract was with the federal government and that the trailer was left on the premises with the consent and for the mutual benefit of the carrier and the manufacturer.

The manager of Adventure Line testified that his contract was with the government, delivery of the bombs was F. O. B. the plant, and the contract said nothing about hauling. Normally, the carrier did leave a trailer and then come at its convenience to haul the load because the carrier did not want to tie up a tractor. This practice served the convenience of the carrier. The manager further testified the only reason he invited the carrier on the plant premises was so the carrier could perform its hauling contract with the government. The truck was loaded by plant employees and, although it was not necessary for the company to load the trailers to get paid, if the government provided a truck Adventure Line would load it.

In the present case it is clear that the trailer was left at the loading dock on the plant premises. At the time the fire occurred neither the owner of the trailer nor any of its employees were present on the

plant premises. The trailer had been left unattended under a customary arrangement to permit the employees of Adventure Line to load the trailer with the manufactured product at their convenience. The factual situation with regard to this unattended trailer differs substantially from the facts in *Buchanan v. Employers Mutual Liability Ins. Co.,* supra; *Arnold v. Western Casualty & Surety Co.,* supra; and *Herrman v. Folkerts,* 202 Kan. 116, 446 P. 2d 834.

In *Buchanan* the property concerned was a dump truck which was being let down the face of a dam by means of a winch mounted on a caterpillar tractor owned and operated by the insured. The dump truck was owned and operated by an independent contractor. The driver of the truck remained at the wheel of the truck throughout the operation. The question of who was exercising "care, custody and control" of the dump truck had to be decided upon the basis of physical custody, dominion, authority or control over the dump truck in the sense of using such property for his own purposes.

In *Arnold* the property consisted of hand tools owned and used by the individual employees while engaged in their ordinary duties. The fire broke out while the plant was in operation. There was no evidence in the record as to the actual physical location, use, custody or control of the employees' tools when the fire broke out except for evidence of the customary practices. This court held that the question of who had possession and control of the hand tools was a question of fact. Since the exclusionary clause was ambiguous the insurance company had the burden of proving that the loss fell within the exclusionary clause and having failed to do so to the satisfaction of the trial court, the trier of fact, the judgment in favor of the employees was affirmed by this court.

In *Herrman* the property concerned was a tractor which the insured took without permission of the owner. At the time the tractor was damaged the insured was actually operating it for his own personal use.

In each of these three cases the factual situations indicated that someone was exercising immediate control over the property at the time the property was damaged. In *Buchanan* both the insured and the owner of the property were present and both were connected in some way with the possessory handling of the property as distinguished from proprietary control. In *Arnold* the plant of the insured was operating and at least some of the tools owned by the employees were being used by the employees when the fire occurred

and both the insured, by its various employees, and the owners of the tools themselves were present on the scene when the fire occurred. In *Herrman* the insured without permission was operating the tractor for his own use and there was no question that the property damaged was in the physical control of the insured.

Under the facts of the present case the trailer was left unattended on the premises of the insured. The owner was not present and the employees of the insured had not begun to load the trailer when the fire started. Therefore it appears that neither the insured nor the owner had custody or control of the trailer in the sense of possessory handling, physical custody, dominion, authority or control over the trailer as distinguished from the proprietary right of control. However, this exclusionary clause in the policy covers property in the *care* of the insured as well as property in custody and control. The provision reads in the alternative with the conjunction "or." So under the factual situation presented in the present case we are concerned with whether the trailer was left in the *care* of the insured, not whether it was in the custody or control of the insured.

In *Campbell Sixty-Six Express, Inc. v. Adventure Line Mfg. Co. Inc.,* supra, it was determined that the owner of the trailer was a business invitee of the insured, that the trailer was left on the premises of the insured at the invitation of the insured and as a result thereof the insured owed a duty to exercise reasonable and ordinary care with respect to the trailer.

In the present case the trailer was delivered by the owner to the premises of the insured. It was understood by the owner and the insured that the trailer was to be placed at the loading dock for a specific purpose, loading with products manufactured by the insured. Under the customary practice followed by the parties it was reasonably implied that the insured would faithfully complete the loading and when that special purpose was accomplished the owner would be notified and the trailer would be kept on the premises until the owner reclaimed it.

In *Global Tank Trailer Sales v. Textilana-Nease, Inc.,* 209 Kan. 314, 496 P. 2d 1292, it is said:

"A bailment for mutual benefit arises whenever it appears that both of the parties receive a benefit from the transaction. It is not essential, to constitute a bailment for mutual benefit, that the bailee actually receive compensation in money or tangible property, so long as the bailment is an incident of the business in which the bailee makes a profit, or was accepted because of benefits expected to accrue." (Syl. ¶ 2.)

In 8 Am. Jur. 2d, Bailments, § 2, p. 906, the following definition of a bailment is given:

"A 'bailment,' in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose *is* accomplished, or kept until the bailor reclaims it."

The transaction in the present case was closely akin to a bailment of the trailer since the trailer was left on the plant premises for the mutual benefit of the parties. The carrier was adjudged to be a business invitee in *Campbell Sixty-Express, Inc. v. Adventure Line Mfg. Co. Inc.*, supra. The property of the business invitee was left unattended with the consent of the insured manufacturer. While on the plant premises the insured had charge of the trailer for the purpose of loading it with manufactured products. During this time and for this purpose the trailer was in the care of the insured under conditions which would imply responsibility for its safe keeping.

Under the facts and circumstances we hold the trailer was "in the care of the insured" within the meaning of the exclusionary clause of the general comprehensive liability insurance policy issued to the insured when the trailer was left unattended on the insured's premises by the common carrier, a business invitee, for the mutual benefit of the parties.

The judgment is affirmed.

PRAGER, J., not participating.